Robert HAWKINS, Petitioner–Appellant,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, and Freeman United Coal Mining Company, Respondents–Appellees.

No. 89–2102.

United States Court of Appeals, Seventh Circuit.

Argued March 6, 1990.

Decided July 20, 1990.

Howard B. Eisenberg, Southern Illinois University, Carbondale, Ill., for Robert Hawkins.

Louis R. Hegeman, Jay D. Stein, Gerald Ratner, Karin T. O'Connell, Gould & Ratner, Chicago, Ill., Robert W. Lewis, Benton, Ill., for Freeman United Coal Mining Co.

Carla Chapman, Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.

Michael J. Denney, Steven D. Breeskin, Robert E. Kirschman, Jr., Dept. of Labor, Office of the Solicitor, Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., for Office of Workers' Compensation Programs.

Before WOOD, Jr., and KANNE, Circuit Judges, and PELL, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Former mine worker Robert Hawkins, a thirty-five year, pack-a-day cigarette smoker, has pneumoconiosis and arteriosclerotic heart disease. He is totally disabled. We must decide whether the ALJ, in denying Hawkins benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (1982), imposed on him the appropriate burden of proof on the issue whether his total disability *was caused* by his pneumoconiosis.

## I. Case History

On March 4, 1987, Hawkins received a hearing on his application for disability benefits under the black lung program. Administrative Law Judge Robert L. Cox denied Hawkins' claim in a written decision issued May 7, 1987. The ALJ framed the issues as follows: (1) was the claim timely filed? (2) did the miner suffer from pneumoconiosis? (3) did the miner's pneumoconiosis arise out of coal mine employment? ("employment causation"); (4) was the miner totally disabled? and (5) was the miner's disability due to pneumoconiosis? ("disability causation"[1]). The parties eventually agreed that the claim was timely, and this issue is not raised on appeal.

The ALJ determined that Hawkins had pneumoconiosis and thus met the first prong of the test. Under the regulations governing Hawkins' case,[2] pneumoconiosis may be shown by x-ray evidence, biopsy or autopsy results, or by means of a "reasoned medical opinion" of a physician. 20 C.F.R. § 718.202.[3] In Hawkins' case, the ALJ found that pneumoconiosis was demonstrated by x-ray evidence. Although the evidence was controverted, the ALJ resolved the conflicting evidence in Hawkins' favor and proceeded to the next step.

The ALJ also found that Hawkins proved that his pneumoconiosis arose from his coal mine employment. This step is met either by the invocation of a rebuttable presumption or by direct proof, depending on the miner's length of employment in the industry. 20 C.F.R. § 718.203. In our case, the parties stipulated that Hawkins had at least twenty years of coal mine employment and thus qualified for the rebuttable presumption under section 718.203(b). In rebuttal, the employer relied on the medical report of Dr. Campbell which concluded that Hawkins' pulmonary disorder was moderate and caused completely by cigarette smoking rather than coal mine employment. The ALJ held that Dr. Campbell's report did not amount to "affirmative evidence that [Hawkins'] pneumoconiosis ... did not arise out of his coal mine employment" and cited two medical reports that contradicted Dr. Campbell's conclusion and explicitly connected Hawkins' lung condition with his coal mine employment. Thus, the ALJ held that the employer failed to rebut the presumption that Hawkins' pneumoconiosis arose from his employment in coal mines.

The next step, showing that the miner is totally disabled, was also resolved in Hawkins' favor. Total disability may be found from the results of pulmonary function tests, arterial blood-gas tests, the existence of both pneumoconiosis and cor pulmonale, or the reasoned medical opinion of a physician if total disability cannot be shown under the first three methods. 20 C.F.R. § 718.204. The ALJ held that Hawkins' pulmonary function test results proved that he was totally disabled. The evidence again was controverted, but the ALJ resolved the conflict in favor of Hawkins and held that he was totally disabled for purposes of the Act.

The last issue the ALJ addressed was whether Hawkins proved that he was totally disabled *due to pneumoconiosis*. The ALJ held that the doctors' reports did not "constitute[ ] probative evidence that [Hawkins] is totally disabled by pneumoconiosis." Upon review of the entire record, the ALJ found that Hawkins had failed to carry his burden of proof on the disability causation issue.

Hawkins appealed the ALJ's decision to the Benefits Review Board. In a per curiam opinion, the Board affirmed the denial of benefits. Citing *Wilburn v. Director,*

---

1. There are two causation tests under the ALJ's analysis. First, the claimant must show that his or her pneumoconiosis arose out of coal mine employment. For clarity, this will be referred to in this opinion as "employment causation." Second, the claimant is required to prove that his or her total disability was caused by pneumoconiosis. This will be referred to as "disability causation."

2. The regulations published at 20 C.F.R. § 718.1–.402 govern Hawkins' case since he filed his claim for benefits after March 31, 1980. *See* 20 C.F.R. § 718.2.

3. Pneumoconiosis may also be shown by qualifying for one of the three presumptions in section 718.202(a)(3).

*OWCP,* 11 Black Lung Rep. 1–135 (1988), the Board held that in addition to the first three steps, "[a] miner ... must [also] establish by direct proof that his pneumoconiosis is, in and of itself, totally disabling." The Board agreed that Hawkins failed to enter such proof and that the ALJ correctly denied benefits.[4]

Hawkins petitioned for a rehearing en banc, arguing that the *Wilburn* standard placed on miners the preclusive burden of proving that they were disabled *solely* due to pneumoconiosis. The Board granted the petition for reconsideration, but affirmed the original panel's decision. The Board reaffirmed its position that "a finding of total disability ... does not relieve claimant of his burden of establishing that his pneumoconiosis is, in and of itself, totally disabling." Since, according to the Board, the pulmonary function results on which Hawkins relied to prove he was totally disabled did not demonstrate "the etiology of the respiratory impairment," the Board agreed that Hawkins failed in his burden of proof. Hawkins now appeals.

## II. Case Law

As originally presented to this court, the issue on appeal[5] was whether a claimant must prove *any* direct causal link between his or her pneumoconiosis and his or her total disability. Hawkins argued that the regulations imposed no such burden on claimants and that a claimant was entitled to benefits as soon as he or she met the three-pronged test of proving (1) the existence of pneumoconiosis, (2) employment causation, and (3) total disability. Thus, according to Hawkins, there was no separate disability causation step in the entitlement analysis.[6] Respondents pointed out in their briefs that a recent Tenth Circuit opinion, *Mangus v. Director, OWCP,* 882 F.2d 1527 (10th Cir.1989), had rejected Hawkins' argument and required claimants under section 718 who were not entitled to a disability causation presumption to enter evidence of this causal link. Respondents urged us to adopt the same reasoning. In his reply brief, Hawkins addressed *Mangus* and attempted to distinguish the case factually.

▮▮▮ Between the time Hawkins filed his reply brief and the date of oral argument, three other circuit courts agreed with *Mangus* that claimants must demonstrate some causal link between pneumoconiosis and total disability. *Lollar v. Alabama By–Products Corp.,* 893 F.2d 1258 (11th Cir.1990); *Adams v. Director, OWCP,* 886 F.2d 818 (6th Cir.1989); *Bonessa v. United States Steel Corp.,* 884 F.2d 726 (3d Cir.1989). At oral argument, we asked the parties to address the applicability of these decisions to Hawkins' claim. A somewhat ambiguous split in authority existed in the four recorded cases: two circuits adopted a "simple contributing cause" standard, *Mangus,* 882 F.2d at 1531; *Adams,* 886 F.2d at 825; two adopted a

---

4. The Board noted in passing that the ALJ had erred in finding that Hawkins was totally disabled based on the pulmonary test results because the ALJ failed to consider contrary probative evidence in the record. The Board held, however, that because the ALJ denied benefits, the error was harmless.

5. The pertinent issues addressed in this appeal are legal in nature rather than factual, and thus we review them under a de novo standard. *Director, OWCP v. Midland Coal Co.,* 855 F.2d 509, 511 (7th Cir.1988); *Director, OWCP v. Ball,* 826 F.2d 603, 604 (7th Cir.1987).

6. Hawkins argued that total disability must be shown under the criteria established in § 718.204, and he contended that the various means of proving total disability under that section (such as pulmonary function tests, blood-gas tests, etc.) necessarily result in a conclusion that the total disability was due to pneumoconiosis. The respondents were incorrect, he argued, in claiming that a miner who was totally disabled by a heart condition or arthritis, for example, would be eligible for benefits under this analysis. Such a miner, Hawkins claimed, would not qualify for benefits because the miner would not be able to prove the *type* of total disability that the Act compensates; namely, disabilities closely related to pulmonary or respiratory functions. Hawkins' argument, however, attempts to resurrect the presumption of § 727.203(a) and have it applied to § 718 cases. Since the § 718 regulations did not carry over this presumption, and no other disability causation presumptions applied to Hawkins' case, he was left with the burden of proof on the disability causation issue after the permanent regulations took effect.

seemingly stricter "substantial contributing cause" standard. *Bonessa*, 884 F.2d at 731; *Lollar*, 893 F.2d at 1265. Respondents conceded that all four circuits that had addressed the issue rejected *Wilburn*, and respondents therefore did not further insist on its application to Hawkins' claim. Hawkins conceded that some burden of proof on the disability causation issue must be met, but neither Hawkins nor the respondents were prepared to address the distinctions in the four cases or to suggest which standard this circuit should adopt. We therefore permitted the parties to file post-argument briefs addressing the issue.[7]

■ Before the briefs were filed, a different panel of this court decided in *Shelton v. Director, OWCP*, 899 F.2d 690 (7th Cir.1990) that black lung claimants were eligible for benefits, if they established a contributing cause relationship between their pneumoconiosis and their total disability. Hawkins argues in his post-argument brief that *Shelton* adopted the simple cause standard of *Mangus* and *Adams*, and that under this standard he is entitled to benefits. Freeman Coal argues that Hawkins is not entitled to benefits under his interpretation of *Shelton*. And the Director argues that *Shelton* adopted the "substantial contributing cause" standard of *Lollar* and *Bonessa*, and that the case should be remanded for a specific finding on the disability causation standard. While we agree that a remand is in order in this case, we disagree that *Shelton* adopted a substantial contributing cause standard or that a substantial cause standard is appropriate. As *Shelton* made clear, claimants must prove a simple "but for" nexus to be entitled to benefits. The differences between the simple and substantial contributing cause standards may be more apparent than real, but we will address the "split" in authority in order to respond to the Director's arguments.

The simple contributing cause standard emerged in *Mangus v. Director, OWCP, supra*, where the Tenth Circuit held that miners must show at least some causal relationship between their pneumoconiosis and their totally disabling condition to be entitled to benefits. 882 F.2d at 1531–32. The court compared the interim presumption of section 727.203(a) and the permanent regulation under section 718.204(c) and noted that while the former "allows a presumption of causation for a properly raised claim which must be rebutted by the employer," the latter "gives the claimant the burden of proving causation." *Id.* at 1529. The court in *Mangus* held that "if the pneumoconiosis is at least *a contributing cause* [of the miner's total disability], there is a sufficient nexus between the pneumoconiosis and the total disability to satisfy claimant's burden of proof." *Id.* at 1531–32.

In deciding on its causation standard, the court in *Mangus* weighed several factors. First, the court noted that the black lung legislation was enacted in large part because the state workers' compensation programs were inadequate to meet the needs of disabled coal miners. The state programs had " 'inflexible, often impenetrable, proof of causation requirement[s]' " that prevented the miners from qualifying for benefits. *Id.* at 1530 (quoting *Southard v. Director, OWCP*, 732 F.2d 66, 71 (6th Cir. 1984)). The *Mangus* court also noted the remedial nature of the black lung legislation and the fact that the courts had consistently resolved doubts in favor of disabled miners. *Id.* at 1530. The court also looked to the requirements of the employment causation standard under section 718.203 and noted that it placed a minimal burden on claimants. Under section 718.-203, a miner had to prove only that his or her pneumoconiosis arose "at least in part" out of coal mine employment. Miners not

---

7. Since the respondents joined in Hawkins' request for leave to file post-argument briefs addressing the split in the circuits, they have waived the argument that Hawkins failed timely to raise the issue below and therefore waived the issue on appeal. *Cf. Shelton v. Director, OWCP*, 899 F.2d 690, 692 (7th Cir.1990) (respon-dents waived the waiver argument). Even if the respondents did not waive their waiver argument, however, we would hold that because of the timing of the case law development, the issue is properly before this court and Hawkins did not waive the issue by failing to raise it below.

entitled to this employment causation presumption had only to prove that their employment was a contributing cause of their pneumoconiosis. *See Southard,* 732 F.2d at 71; *Stomps v. Director, OWCP,* 816 F.2d 1533, 1536 (11th Cir.1987). The contributory cause standard for employment causation, according to the court, weighed in favor of a comparable standard for disability causation. *Mangus,* 882 F.2d at 1531.

Finally, the *Mangus* court noted that any standard greater than contributing cause (such as "substantial" or "significant" contributing cause) would place an inappropriately heavy burden on claimants because it would be extremely difficult for the claimant who may have a number of disabilities to prove "the relative quantification of the various causal elements." *Id.* The court in *Mangus* concluded that "[i]f Congress had desired to even further increase the burden on the claimant, it could have done so explicitly in [the] 1981 [Amendments], or, by further amendment, in any of the subsequent seven years." *Id.*[8]

In a second case, the Sixth Circuit independently arrived at the same "simple" contributing cause standard. *Adams v. Di-rector, OWCP, supra* (*Adams* was decided within six weeks of *Mangus* and did not cite or otherwise rely on the case). The *Adams* court first noted that the regulations, going back to HEW's section 410 regulations, had never required the Wilburn standard of causation that the Director insisted was intended by Congress. 886 F.2d at 823. Section 410.426(a) of HEW's regulations, for example, required only that a claimant prove that his or her pneumoconiosis was the "primary reason" for total disability.[9] Section 727.203 provided a presumption of disability causation which could be rebutted by showing that the miner's pneumoconiosis was not a "contributing cause" of his or her disability. The court in *Adams* concluded that "[i]f the asserted [*Wilburn* standard] were indeed mandated by the Act, as the Director now contends, we would expect rebuttal under section 727.203 to be accomplished by a showing that the claimant's pneumoconiosis was not totally disabling in and of itself" rather than a showing that the claimant's pneumoconiosis was not a contributing cause of his or her total disability. *Id.* at 824.

**8.** The Federal Coal Mine Health and Safety Act of 1969, subsequently amended by the Black Lung Benefits Act of 1972 and the Black Lung Benefits Reform Act of 1977, was again amended in 1981. Black Lung Benefits Amendments of 1981, 30 U.S.C. §§ 922, 923; Black Lung Revenue Benefits Act of 1981, 26 U.S.C. § 4121. This legislation was passed in response to the large deficit created in the Black Lung Trust Fund. *Bonessa,* 884 F.2d at 727; Lopatto, *The Federal Black Lung Program: A 1983 Primer,* 85 W.Va.L.Rev. 677, 677–78 (1983). In addition to raising taxes on coal operators to increase the trust fund's income, the 1981 Amendments tightened eligibility requirements for miners by further restricting a claimant's ability to rely on statutory presumptions. The Amendments eliminated three presumptions for claimants who filed for benefits after January 1, 1982, but preserved two other presumptions. *See* Lopatto, *supra,* at 700. These changes had no direct impact on Hawkins' claim since he did not proceed under any of the affected presumptions.

**9.** Section 410.426(a) of the "permanent regulations" HEW promulgated required that the miner establish that his or her "pneumoconiosis is (or was) *the primary reason* for his [or her]

inability to engage in such comparable and gainful work." 20 C.F.R. § 410.426(a). These regulations proved "significantly more demanding than the [previous] interim rules, and as a consequence, the claim approval rate was much lower." *Strike v. Director, OWCP,* 817 F.2d 395, 398 (7th Cir.1987). The stricter eligibility requirements and lower claim rates "led to over two years of hearings and debate in Congress ... on various bills proposing amendments to the standard." *Id.* The result was the enactment of the Black Lung Benefits Reform Act of 1977. The 1977 Act transferred authority to promulgate the permanent regulations from HEW to the Secretary of Labor. "In 1978 the Secretary [of Labor] promulgated a set of regulations governing the review of pending and previously denied claims." *Id.* at 399. These interim regulations created the disability causation presumption found in § 727.203. In 1980, the Secretary issued permanent regulations. Found in § 718, and applicable to Hawkins' claim, these regulations failed to carry over the interim presumption, but also failed to replace it with a specific disability causation standard. It was this action that created the necessity for the establishment of a disability causation standard and led to the differing standards in the circuits.

The *Adams* court also relied on the remedial nature of the Act: "This court has often repeated that the Act is remedial legislation that should be liberally construed so as to include the largest number of miners within its entitlement provisions." *Id.* at 825. Since the impetus for the benefits legislation was to provide support to miners who could not meet the stringent causation requirements of state workers' compensation laws, imposing a similarly restrictive "in and of itself" requirement would, according to the court, thwart congressional intent.

Finally, the *Adams* court noted that "parallel causation requirements" existed for employment and disability causation under the section 727 interim regulations. In other words, the relationship "between pneumoconiosis and coal mine employment and the relationship between total disability and pneumoconiosis" were both analyzed under the "contributing cause" standard. Since, according to the *Adams* court, there is no language in the regulations or in the legislative history that could be interpreted to mean that this parallelism was to be abolished under the permanent section 718 regulations, it should survive and apply to the facts in that case. *Id.*

*Bonessa v. United States Steel Corp.,* *supra,* was the first case to impose the "substantial" contributing cause standard on claimants. 884 F.2d at 733 (decided between *Mangus* and *Adams, Bonessa* neither cites nor relies on either of these cases). The Third Circuit in *Bonessa* focused in part on the elimination of the section 727.203(a) presumption, but the source for its substantial cause standard was section 718.205. Section 718.205 provides the eligibility requirements for survivors of miners whose *deaths* were "due to pneumoconiosis." Under the earlier regulations applicable to survivors, benefits were awarded to survivors "not only if the miner died due to pneumoconiosis, but also if during his lifetime he was disabled due to pneumoconiosis and then died from an unrelated cause." *Id.* at 728.

The 1981 Amendments eliminated this broad presumption of "death due to pneumoconiosis," and survivors were given the burden of proof on causation disability. After the 1981 Amendments were passed, the Department of Labor promulgated the following addition to section 718.205:

> [S]urvivors are not eligible for benefits where the miner's death was caused by a traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death.

20 C.F.R. § 718.205(c)(4). The *Bonessa* court found this language relevant to the question of the proper burden to be imposed on totally disabled miners under section 718.204(c): ·

> We can perceive no reason why the phrase "total disability due to pneumoconiosis" [in § 718.204] should not track the phrase "death due to pneumoconiosis" [in § 718.205] which encompasses the situation where pneumoconiosis was a substantial contributor to that death and thus, permit recovery for benefits when pneumoconiosis is a significant contributor to a living miner's disability.

884 F.2d at 733. The court thus concluded that claimants must show that their pneumoconiosis was a substantially contributing cause to their total disability before benefits would be awarded.

The Eleventh Circuit in *Lollar v. Alabama By–Products Corp., supra,* adopted *Bonessa's* approach. "[W]e find more persuasive the Third Circuit's analogy in *Bonessa* to the causation standard of section 718.205(c), which explicitly defines 'due to' as requiring a 'substantially contributing cause.'" 893 F.2d at 1265. The court did not distinguish *Mangus'* simple contributing cause standard, but held that *Adams* did not really choose the "simple" cause standard; rather, "*Adams* . . . was careful to observe that '[n]othing in this record suggests that Adams' pneumoconiosis played only an infinitesimal or de minim[i]s part in his totally disabling respiratory impairment.'" *Id.* (quoting *Adams,* 886 F.2d at 826).

This court decided *Shelton v. Director, OWCP, supra,* shortly after *Lollar* was

issued. In *Shelton*, the ALJ had awarded the claimant benefits, but the Board reversed, holding that the claimant failed to meet the *Wilburn* disability causation standard. 899 F.2d at 692. We joined the other circuits in rejecting *Wilburn* and noted that the circuits differed on whether contributing cause or substantial contributing cause was the appropriate replacement. However, "none of the lawyers in [*Shelton* was] able to explain the meaning of the competing causal standards.... [and we were] compelled to approach the issue from the standpoint of first principles rather than of precedent." *Id.* Our analysis in *Shelton* led us to the conclusion that a claimant must show that pneumoconiosis [10] is a necessary, but need not be a sufficient, cause of his or her total disability.

We rejected the Board's *Wilburn* standard in *Shelton* because it required that pneumoconiosis be both a necessary and a sufficient cause of the miner's total disability—in essence, requiring the miner to prove that pneumoconiosis was the sole cause of his or her disability. Alternatively, we suggested that benefits were not appropriate where the miner's pneumoconiosis was a sufficient but not a necessary cause of his or her total disability. This

would, we reasoned, "confer a pure windfall" on the miner.[11] *Id.* at 693. We held that necessary but not sufficient cause was the appropriate standard because it made the most sense and because it "corresponds to the standard of causation used in most other areas of law." *Id.*

Hawkins contends that *Shelton* settled the issue and adopted, albeit in different language, the simple cause standard enunciated in *Mangus* and *Adams*. The Director contends, however, that the necessary but not sufficient cause standard is "not meaningfully different from the [substantial cause] standard which the courts in *Bonessa* and *Lollar* adopted." The Director's concern is that the necessary cause standard enunciated in *Shelton* could allow a miner to demonstrate that his or her pneumoconiosis was a necessary cause of total disability, but that pneumoconiosis represented such a negligible or de minimis addition to the overall finding of total disability that it could not be said that the miner was entitled to benefits intended to compensate persons "totally disabled due to pneumoconiosis." Thus, the Director concludes, *Shelton* should be construed to mean "substantial contributing cause."

**10.** The court in *Shelton* stated that *"mining* must be a necessary, but need not be a sufficient, condition of the miner's disability." 899 F.2d at 693 (emphasis added). We wish to note, however, that *Shelton* dealt with disability causation, not employment causation. The focus in disability causation questions is the link between the miner's pneumoconiosis and his or her total disability; the focus in employment causation questions, on the other hand, is the link between the claimant's mining and his or her pneumoconiosis.

For employment causation questions, the regulations provide that a claimant must prove that his or her pneumoconiosis arose "at least in part" from mining. 20 C.F.R. § 718.203(a). *Shelton* held that, for disability causation questions, a claimant must prove that his or her pneumoconiosis was a necessary cause of his or her total disability. Combining these two inquiries has the potential of excluding a case in which a miner's pneumoconiosis arose, at least in part, from mining (while a portion arose from a nonmining job, for example), and a close question exists as to whether the miner's pneumoconiosis was a necessary cause of his or her total disability. In that case, it is possible that

the claimant's *mining* would not be a necessary cause of his or her total disability, while under the two-part analysis the claimant could prove that pneumoconiosis arose at least in part from mining, and that his or her pneumoconiosis was a necessary cause of his or her total disability. This claimant would be eligible for benefits notwithstanding the implication in *Shelton* that a direct link is required between the claimant's mining and his or her total disability.

**11.** The Director points out that this statement conflicts with earlier decisions of this court holding that "'[t]he concurrence of two sufficient disabling medical causes, one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act.'" *Amax Coal Co. v. Director, OWCP*, 801 F.2d 958, 963 (7th Cir.1986) (citing *Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 363 (7th Cir.1985)). Since the dual-cause issue was not before the court in *Shelton*, the language to which the Director objects was dicta and we do not believe that *Amax* or *Peabody* have been overruled. Since the analysis of this problem is not before the court in this case either, however, we need not address the issue further.

We reject this suggestion and hold that *Shelton* provides the appropriate standard for disability causation questions under section 718. We find it unnecessary to add a layer of confusion to this standard by requiring the claimant to prove that his or her pneumoconiosis was the "substantial" necessary cause of the "primary" necessary cause of the miner's total disability. The claimant's pneumoconiosis either is or is not a necessary cause of his or her total disability. This is the sole question the ALJ must answer under section 718.204.

The Director contends that the court in *Bonessa* was similarly concerned with de minimis causal connections, and that the court therefore imposed the heightened burden of substantial contributing cause on claimants; the Director urges us to follow suit. The *Bonessa* court looked to the survivor eligibility regulations and found these to be sufficiently analogous to apply the "substantial cause" standard to disability causation. There are problems with this approach. The detailed revisions to section 718.205 [12] do not specifically state that they are inapplicable to section 718.204 disability claims, but the inference is strong that they do not apply. The revisions of section 718.205 were issued on precisely the same day as revisions to section 718.204. *See* 48 Fed.Reg. 24,271, 24,272 (May 31, 1983). If the revisers had intended to address the definition of "total disability due to pneumoconiosis" in addition to their discussion of "death due to pneumoconiosis," they could easily have done so. Also, if they had intended their discussion and revision of one to apply to the other, they could easily have added a sentence requiring or

even suggesting this outcome. Instead, they altered section 718.204 separately by adding the caveat in section 718.204(c)(5) that "proof that the miner suffers or suffered from a totally disabling respiratory or pulmonary impairment ... shall not, by itself, be sufficient to establish that the miner's impairment is or was due to pneumoconiosis." This language offers no support for the argument that disabled miners must prove "substantial" rather than "simple" contributory cause. Indeed, if the revisers sought to require that claimants demonstrate that pneumoconiosis was "the primary cause" in the mix of impairments that totally disabled the miner, they could have attempted to resurrect this requirement from the previous regulations under section 410.426(a). We do not believe that this was intended or accomplished.

*Bonessa* could find no grounds on which to distinguish disability claims from survivor claims. *See* 884 F.2d at 733. However, grounds exist on which to distinguish these claims, and it is logical that the regulations would require survivors to meet a higher causation burden than living disabled miners. First, the dead miner's medical evidence in many cases may consist solely of medical reports and data from the deceased miner's own physician. This occurs, for example, in cases where the miner did not apply for benefits before his or her death, and the miner's dependents come forward claiming entitlement after the miner's death. In such cases, the medical evidence might consist solely of reports and diagnoses from the miner's personal physician. *Cf. DeFrancesco v. Bowen*, 867 F.2d 1040, 1043 (7th Cir.1989) (noting our observation

---

12. Language was added in a number of areas of § 718.205 to clarify the meaning of the phrase "death due to pneumoconiosis." Under § 718.205(c)(2), the survivor is required to prove that "pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or [that] death was caused by complications of pneumoconiosis." Under § 718.205(c)(4), the regulations require the survivor to prove that pneumoconiosis was a substantially contributing cause of death when the miner's death was "caused by traumatic injury or ... a medical condition not related to pneumoconiosis." Finally, clarifying language in § 718.205(d) provides:

"Where the initial medical evidence appears to establish that death was due to pneumoconiosis, the survivor will receive benefits unless the weight of the evidence [in rebuttal] ... establishes that the miner's death was not due to pneumoconiosis as defined above." When read together, however, it is clear from this language that "pneumoconiosis need not [be] the 'principal', sole, primary or proximate cause of the miner's death in order for the survivor's claim to be compensable." 48 Fed.Reg. 24,271, 24,277 (May 31, 1983).

that treating physicians may occasionally "go the extra step in helping their patients obtain benefits for a medical condition"). In contrast, a party facing a claim from a living, disabled miner can build a record of rebuttal evidence (if any exists) by sending the miner to its own physicians for examinations and testing. In addition, a living, disabled miner may have his or her benefits rescinded at a later date if the miner engages in gainful employment or if the original adjudication of benefits is later called into question.[13] On its face, this section does not apply to survivors' claims. For these reasons, we believe that there are relevant differences in the standards to be applied to disability claims and death claims. Therefore, we conclude that the "substantial contributing cause" analysis in *Bonessa* is not necessarily authoritative.

The arguments in favor of the necessary cause standard are more persuasive. A number of cogent arguments have been advanced by the Tenth Circuit in *Mangus*, and the Sixth Circuit in *Adams*. In addition to these, we suggest an additional ground for arriving at the necessary cause standard. Under section 727.203(a), a miner qualified under the interim presumption if he or she proved ten years or more of coal mine employment and qualifying test results. The employer then had the burden of rebutting the presumption and could meet its burden *only* by showing that the miner's pneumoconiosis was not a contributing cause of the miner's total disability. *See, e.g., Peabody Coal Co. v. Helms,* 859 F.2d 486, 489 n. 5 (7th Cir.1988); *Wetherill v. Director, OWCP,* 812 F.2d 376, 380 (7th Cir.1987); *see also Adams,* 886 F.2d at 824; *Mangus,* 882 F.2d at 1529 n. 4 (collecting cases). In other words, the employer had to prove that the miner was totally disabled

*solely* due to some *other* cause. If the employer did not prove that the miner was totally disabled by some other condition, the miner was awarded benefits.

With this in mind, it becomes clear that the miner's presumption under section 727.203(a) was that his or her pneumoconiosis was (at least) a contributing cause of his or her total disability. The permanent regulations under section 718 failed to continue this presumption, so the burden of proving this element fell to the miner under section 718.204. The miner must now bear the burden of what had earlier been presumed: that pneumoconiosis was (at least) a contributing cause of his or her total disability. We believe that this analysis precludes the imposition of the higher substantial contributing cause standard advanced in *Bonessa* and adopted in *Lollar.*

### III. Application

Applying the necessary cause standard to our facts is problematic because it is unclear what degree of causation the ALJ required Hawkins to prove. The ALJ stated that Hawkins had to prove by a preponderance of the evidence that he is "totally disabled by pneumoconiosis." Unstated is the degree of causation the ALJ expected. The respondents claim that the ALJ could not have applied the *Wilburn* standard because *Wilburn* was not issued until after the ALJ denied Hawkins benefits in this case. It seems likely, however, that the ALJ placed on Hawkins a higher burden than necessary cause.

The evidence introduced at Hawkins' hearing on this question was conflicting. For example, a report from Dr. Cawvey, Hawkins' treating physician, concluded that Hawkins suffered from a pulmonary

---

**13.** Section 718.404 provides the following:

§ **718.404  Cessation of entitlement.**

(a) An individual who has been finally adjudged to be totally disabled due to pneumoconiosis and is receiving benefits under the Act shall promptly notify the Office and the responsible coal mine operator, if any, if he or she engages in any work as defined in § 718.204(c).

(b) An individual who has been finally adjudged to be totally disabled due to pneumoconiosis shall, if requested to do so upon

reasonable notice, where there is an issue pertaining to the validity of the original adjudication of disability, present himself or herself for, and submit to, examinations or tests as provided in § 718.101, and shall submit medical reports and other evidence necessary for the purpose of determining whether such individual continues to be under a disability. Benefits shall cease as of the month in which the miner is determined to be no longer eligible for benefits.

obstructive disease attributable to Hawkins' coal mine employment. Dr. Cawvey also opined that Hawkins' thirty-five year smoking habit did not contribute greatly to his current lung condition because Hawkins had stopped smoking ten years earlier. A second potentially supportive report, from Dr. Singh, concluded that Hawkins' "chronic bronchitis" was attributable to his coal mine employment. However, a report from Dr. Campbell, the employer's physician, concluded that Hawkins was totally disabled due to his heart disease and not his obstructive pulmonary condition. In Dr. Campbell's opinion, Hawkins' lung "irritation" was caused solely by his smoking, and there was no connection between his pulmonary lung disorder and his coal mine employment. Another report, from Dr. Gensch, found that at the time of his examination Hawkins' pulmonary disease had "at no time presented a problem."

Hawkins claims that there is no true conflict in the evidence on the question of disability causation. He reasons that evidence was introduced at the hearing showing that Hawkins' *pulmonary* study demonstrated that he was totally disabled. While evidence was also entered that concluded that Hawkins was totally disabled due to heart disease, he argues that no evidence suggested that he was totally disabled by cigarette smoking or any other *pulmonary-related* causes. Since, Hawkins argues, "heart disease would not manifest itself on a pulmonary function study," the alternative diagnosis that he was totally disabled due to heart disease does not preclude an award of benefits. Since the evidence shows that he has a total pulmonary disability, and there is no contrary evidence of causation relating to his pulmonary functioning (i.e., that his smoking was the actual cause of his disability), Hawkins contends that the ALJ must find that Hawkins' pneumoconiosis was at least a contributing cause of his total disability.

The respondents claim that Hawkins failed to produce any evidence specifically connecting his pneumoconiosis and his total disability. They claim that Hawkins could

generate qualifying *pulmonary* test results, yet still not be totally disabled by pneumoconiosis. This could occur, they contend, if Hawkins' heart condition interfered with an accurate pulmonary function test. Thus, they disagree with Hawkins' claim that his heart disease alone could not produce a qualifying pulmonary test result.

We conclude that a remand is required in this case. As noted above, it is unclear what standard of causation the ALJ required Hawkins to meet. On remand, the ALJ should apply the *Shelton* standard to determine whether Hawkins has established that his pneumoconiosis was a necessary (but not sufficient) cause of his total disability. In addition, the ALJ can more accurately analyze the parties' arguments regarding the potential effect of heart disease on the accuracy of pulmonary function study results.[14]

### IV. Conclusion

In light of the foregoing, the petition for review is GRANTED and the Benefits Review Board's decision in this case is VACATED. The case is REMANDED for application of the appropriate causation standard to claimant Hawkins' case and for resolution of related factual disputes.

---

**14.** On remand, the ALJ can also address the Board's concern, noted *supra* at note 4, that the ALJ failed properly to weigh the contrary proba-

tive evidence concerning Hawkins' pulmonary test results.