Clyde M. COLLINS,
Petitioner–Appellant,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Benefits Review Board, Respondents–Appellees.

No. 89–3441.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1990.

Decided May 21, 1991.

Howard B. Eisenberg, Southern Illinois University, School of Law, Carbondale, Ill., for Clyde M. Collins.

Eileen N. McCarthy, Dept. of Labor, Appellate Litigation, Steven D. Breeskin, Richard Zorn, Dept. of Labor, Office of the Sol., Washington, D.C., Robert A. Mitchell, Dept. of Labor, Columbus, Ohio, for Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Eileen N. McCarthy, Linda M. Meekins, Ann McLaughlin, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.

Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

In March 1981 petitioner Clyde M. Collins filed an application for Black Lung Benefits under 30 U.S.C. §§ 901–904. He sought benefits on the ground that he has a totally disabling respiratory impairment due to pneumoconiosis. In June 1986 Administrative Law Judge Gray determined that Collins was entitled to benefits. However, the Director of the Office of Workers' Compensation Programs in the Department of Labor appealed the decision to the Benefits Review Board, which reversed the ALJ's decision in October 1989. Petitioner thereupon sought review in this Court.

We vacate the Board's decision and remand the case to the ALJ.

The ALJ found that Collins had six years of coal mine employment and that the Director conceded that he had pneumoconiosis. He also found that Collins' pneumoconiosis arose in part out of coal mine employment and concluded as follows:

> Having found that Claimant is totally disabled within the meaning of the Act from pneumoconiosis deriving from coal mine employment, I find that he is entitled to benefits under the Act.

App. A–8.

In his appearance before the Benefits Review Board, the Director contended that the ALJ had erred in finding that Collins' pneumoconiosis arose out of coal mine employment and that he was totally disabled due to pneumoconiosis. In reversing the ALJ, the Benefits Review Board observed that the record contained no medical evidence providing any causal nexus between petitioner's total disability and his pneumoconiosis. As the Board stated, the only medical report indicated that Collins has difficulty walking and climbing stairs due to shortness of breath, with the doctor diagnosing only congestive heart failure unrelated to coal mine employment. The ALJ had relied solely on a pulmonary study showing Collins had total disability. However, he did not advert to any evidence to support his conclusion that the total disability was due to pneumoconiosis. The Board first noted that the record was "devoid of medical evidence," but went on to make the broader statement that petitioner had failed to provide "any competent evidence of disability due to pneumoconiosis" to support his claim (App. A–2). "Competent evidence" does not necessarily mean "medical evidence" and could reasonably include other offers of proof by the petitioner in support of his claim. The ALJ's decision was reversed on the ground that Collins had not shown his disability was due to pneumoconiosis.

■ The Director has asked us to affirm the Board's decision due to Collins' failure to establish any relationship between his disability and pneumoconiosis. In *Haw-* *kins v. Director, OWCP*, 907 F.2d 697, 706 (7th Cir.1990), we held that in order to recover benefits, a miner must show that pneumoconiosis was at least a contributing cause of his total disability. We recently reaffirmed our adherence to this standard in *Compton v. Inland Steel Co.*, 933 F.2d 477 (7th Cir.1991). The Board has now adopted the contributing cause standard. *Scott v. Mason Coal Co.*, 14 BLR 1–37 (1990) (*en banc*). We agree with the Board that the record is devoid of medical or other evidence showing any causal nexus between Collins' total disability and his pneumoconiosis. The Director insists that there must be medical evidence of such linkage. Neither in his brief nor at oral argument has he referred us to any judicial or administrative cases so holding. The applicable regulation, 20 C.F.R. § 204, contains no such requirement. At oral argument, the Director's attorney cited *Poniansky v. Director*, 7 BLR 1–171 (1984), as such an authority, but it is not. *Poniansky* merely held that the pulmonary studies and medical evidence there failed to show the requisite causal relationship.

In the absence of any such statutory or regulatory requirement, we refuse to hold that a claimant must always produce a physician's report of a causal relationship between the pneumoconiosis and the total disability, particularly in view of the Board's recognition, noted above, that "competent evidence" would suffice to prove causation. The Board acted without any supporting authority in so holding. The concurrence charges this Court with ignoring the directive contained in a miscellaneous provision of the Act in our conclusion that a claimant need not produce medical evidence that his total disability is due to pneumoconiosis. The concurrence directs our attention to 20 C.F.R. § 718.402, providing that: "An individual shall not be determined entitled to benefits unless he or she furnishes such medical evidence as is reasonably required to establish his or her claim."

The concurrence believes that this provision imposes a blanket requirement on

claimants to produce medical evidence as to each facet of their claim, including a claimant's burden to show that total disability was due to pneumoconiosis. However, such an argument as to § 718.402 lacks credibility for several reasons. First, the briefs contain no mention of the provision and it was not mentioned or relied upon by the Director's attorney at oral argument or the ALJ and Benefits Review Board in their respective decisions. In addition, even if § 718.402 may properly be considered by this Court, that provision nowhere mentions § 718.204, the section mandating that total disability be due to pneumoconiosis. Therefore we cannot agree with the concurrence that § 718.402 imposes a requirement that medical evidence be produced under § 718.204. Finally, upon complete examination, § 718.402 addresses the claimant's obligation to provide either medical history when it is available, § 718.402(a), or to submit to a medical test or examination if requested by the deputy commissioner, § 718.402(b). Therefore this provision governs the appropriate disclosure of medical evidence by a claimant; it imposes no legal requirement that a claimant provide medical evidence specifically proving that total disability was due to pneumoconiosis.

The concurrence suggests that it would be difficult if not impossible to support a legal conclusion that a miner's total disability is due to pneumoconiosis without providing medical evidence to document the causal relationship. We can envision, however, a case in which a miner, who has pneumoconiosis, is found to be totally disabled, and does not suffer from any other ailments (and is a non-smoker and non-drinker), would claim an entitlement to benefits. In that case, no medical evidence would be necessary specifically showing that the total disability was due to pneumoconiosis. Even though the ALJ did not refer to any medical evidence to determine whether Collins' pneumoconiosis was a contributing cause of his disability, this would not preclude claimant from recovering ben-efits if he introduced other competent evidence of causation.

■ Dr. Sanjabi's medical report, after Collins reported that he had no respiratory problems, diagnosed his condition as congestive heart failure. This could have caused Collins' disability and yet Sanjabi's report was not even mentioned by the ALJ. 20 C.F.R. § 718.204(b) states that benefits are due miners "who are totally disabled due to pneumoconiosis." * The ALJ cites no evidence that Collins' total disability was caused at least in part by pneumoconiosis rather than congestive heart failure or some other condition. This failure cannot be excused.

To avoid further delays in resolving this matter, the Board's decision is vacated and the case is remanded to the ALJ to consider whether any evidence in the record (or adduced by Collins if he so desires) shows Collins' pneumoconiosis is a contributing cause of his total disability. If so, he is entitled to compensation under the Black Lung Benefits Act.

COFFEY, Circuit Judge, concurring.

I agree with the majority's decision to remand this case to the ALJ, since he failed to cite any "evidence that Collins' total disability was caused at least in part by pneumoconiosis rather than congestive heart failure or some other condition." Majority Opinion at 1193. But in doing so the majority decides an important question that need not be resolved on this appeal, and they utilize a legal standard for determining whether a coal miner's disability is "due to" pneumoconiosis contrary to the intent underlying the Black Lung Benefits Act, including the 1981 amendments. Hence, I write separately to explain my disagreement.

I fail to understand why the majority gratuitously dealt with the question of whether a "claimant must always produce a physician's report of a causal relationship between the pneumoconiosis and the total

* § 718.204(c)(1) to (c)(4) provides that in the absence of contrary probative evidence, a min-er's total disability may be established through certain specified medical evidence.

disability," Majority Opinion at 1192,[1] as the ALJ did not rely upon a physician's report in his decision. In my opinion, this holding was unnecessary because "the ALJ did not refer to any medical evidence to determine whether Collins' pneumoconiosis was a contributing cause of his disability." *Id.* at 1193. In dealing with this issue, the majority holds that it is unnecessary to produce medical evidence regarding causation in a black lung case. On the other hand, had the ALJ referred to *any* evidence that would support a causation finding, it would have been appropriate for the majority to resolve the legal question of whether causation may be established without the use of a physician's interpretation of medical evidence.

But since the majority has seen fit to decide the issue of the necessity of medical evidence of causation, I am forced to deal with it, as I disagree and wish to point out that, as the Director argued, in order to receive black lung benefits the legal determination of the cause of a miner's total disability must depend upon medical evidence linking pneumoconiosis to the miner's incapacity. The majority attacks the Director's argument by stating that "[n]either in his brief nor at oral argument has he referred us to any judicial or administrative cases so holding. *The applicable regulation, 20 CFR § [718.]204, contains no such requirement.*" Majority opinion at 1192 (emphasis added). I am surprised at the majority's statement that § 718.204 "contains no such requirement," since 20 C.F.R. § 718.402 specifically states that a claimant must present adequate medical evidence: "An individual shall not be determined entitled to benefits unless he or she furnishes such medical evidence as is reasonably required to establish his or her claim." Thus, the majority's statement is simply wrong.[2] Moreover, as a matter of

logic, I cannot conceive how an ALJ could find that a miner was totally disabled "due to" pneumoconiosis in the absence of a complete medical history and diagnosis with the accompanying tests and data. How else can one determine whether a miner is totally disabled or the cause of the miner's total disability? How, without pulmonary function tests, including spirometry, blood gas, x-rays and other diagnostic and pulmonary testing devices, could one conclusively differentiate and determine that a miner is suffering from black lung disease rather than a myriad of other unrelated respiratory problems such as emphysema, asthma, tuberculosis, pneumonia, chronic bronchitis or asbestosis to mention a few? One of the concerns raised while considering the 1981 Black Lung Benefits Amendments was reflected in the 1981 General Accounting Office report, which stated that "its survey of Department of Labor-approved claims revealed 84 percent of the cases were based on *inadequate or conflicting medical evidence.*" *Black Lung Benefits and Revenue Amendments of 1981: Hearing Before the Subcommittee on Labor of the Committee on Labor and Human Resources, United States Senate on S. 1922,* 97th Cong., 1st Sess. 10–11 (1981) (statement of Senator Orrin Hatch) (emphasis added). It is clear that Congress was concerned with granting claims with inadequate medical evidence. Thus, I am at a loss to understand how the majority can conclude that Congress would desire to allow benefits without *any* medical evidence that pneumoconiosis caused the total disability.

In addition to medical evidence of causation, I believe we should require a report from a qualified physician stating that pneumoconiosis is at least 51 percent responsible for the miner's total disability. Who other than a trained physician with

---

1. I am cognizant of the fact that the parties addressed this issue in their briefs and at oral argument.

2. The majority argues that § 718.402 "nowhere mentions § 718.204" and states that it "imposes no legal requirement that a claimant provide medical evidence specifically proving that total disability was due to pneumoconiosis." Majori-

ty Opinion at 1193. What else would one expect "such medical evidence as is reasonably required to establish his or her claim" to mean? The section specifically requires medical evidence, and the failure to state the obvious fact that "claim" refers to a claim of total disability or death due to pneumoconiosis does not prevent the section from applying to § 718.204.

some expertise in pulmonary problems is more qualified to initially interpret and render an opinion concerning the medical testing data used to diagnose the medical problems from which the miner is suffering? How does one support a legal conclusion that a miner's total disability is "due to" pneumoconiosis without a medical report documenting the relationship? I would hold that the "medical evidence as is reasonably required to establish his or her claim," 20 C.F.R. § 718.402, includes a medical report documenting the percentage of the relationship between pneumoconiosis as related to the miner's total disability. This would not be a burden to the miner, for under 20 C.F.R. § 718.401, the government must bear the cost of the medical tests necessary to support the claim:

> "Each miner who files a claim for benefits under the Act shall be provided an opportunity to substantiate his or her claim by means of a complete pulmonary evaluation. Accordingly, the Office shall assist each claimant in obtaining the evidence, including medical evidence, necessary for a complete adjudication of a claim. In the case of a miner's claim, initial medical tests and examinations shall be arranged for the miner by the Office, at no cost to the miner...."

A doctor's report documenting the relationship between pneumoconiosis and total disability is clearly within the scope of the "initial medical tests and examinations [to] be arranged for the miner by the Office, at no cost to the miner." To hold that an ALJ may determine that a miner's total disability is "due to" pneumoconiosis without a medical report leaves the ALJ without the necessary medical data and information to resolve the basic issue.

In remanding this case to the ALJ, the majority has required the application of the "contributing cause" standard set forth in this Court's decisions in *Shelton v. Director, OWCP*, 899 F.2d 690 (7th Cir.1990) and *Hawkins v. Director, OWCP*, 907 F.2d 697 (7th Cir.1990). For reasons more fully discussed in my *Compton* concurrence, *Compton v. Inland Steel Coal Co.*, 933 F.2d 477 (7th Cir.1991) (Coffey, J., concur-

ring), I am convinced that the amorphous *Shelton–Hawkins* standard is inconsistent with the intent of Congress that a miner establish total disability "due to" pneumoconiosis. *See also Shelton v. Old Ben Coal Co.*, 933 F.2d 504 (7th Cir.1991) (Coffey, J., dissenting). Rather, I believe that a miner should be required to demonstrate through convincing medical evidence (*see* 20 C.F.R. § 718.402) that pneumoconiosis constituted *at least 51 percent* of the cause of his total disability, as this standard is more sound, medically and scientifically more accurate and thus complies with congressional intent. The "51 percent" standard effectuates Congress' desire that only those who actually suffer from a clearly medically documented pneumoconiosis-caused total disability should recover black lung benefits. As the panel in *Shelton* recognized, the Black Lung Benefits Act "is not a welfare program for cigarette smokers." *Shelton*, 899 F.2d at 693. A lesser standard of causation, while being subjective and undefinable, such as the "contributing cause" standard enunciated in *Shelton* and *Hawkins*, is so broad that it can permit recovery in cases where the miner's condition falls short of meeting the medical standard necessary to comply with the "due to" pneumoconiosis requirement, but may well have been "due to" other unrelated medical problems and/or physical infirmities, such as emphysema caused by cigarette smoking, alcoholism, hypertension, kidney failure, asbestos-related problems, heart disease or diabetes. The *Shelton–Hawkins* standard would permit recovery of pneumoconiosis benefits in cases where pneumoconiosis was as little as five percent of the cause of disability, as long as it was deemed "necessary" to the miner's total disability. Thus, a miner could receive benefits even in a case where eighty percent of his total disability was due to smoking-related conditions and fifteen percent to alcohol-related problems, so long as he could demonstrate that a mere five percent of the total disability stemmed from pneumoconiosis. In contrast, the "percentage" test as set forth herein complies with the congressional intent to pro-

vide black lung benefits to each and every deserving miner who is able to establish through competent medical evidence that black lung disease is the primary (51 percent) source of total disability. The "51 percent" test clearly conforms to the legislative intent of The Black Lung Benefits Act, including its amendments of 1981, wherein Congress stated its desire to tighten eligibility requirements for black lung benefits and thus eliminate the disbursement of funds to unqualified applicants in order to alleviate the deficit experienced in the Black Lung Trust Fund. My reading of the statutory language and its amendments, together with the legislative history (language of the Act is ambiguous) leads me to conclude that the Black Lung Benefits Amendments of 1981 require that a miner demonstrate that his pneumoconiosis lung damage was *at least 51 percent* of the cause of his total disability. Hence, on remand, the ALJ should require Collins to demonstrate that pneumoconiosis is at least 51 percent of the cause of his total disability before any award of benefits.