Arthur BONESSA, Petitioner,

v.

UNITED STATES STEEL
CORP., Respondent,

and

Director, Office of Workers' Compensation Programs, U.S. Department of Labor, Party In Interest.

No. 89–3066.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 26, 1989.

Decided Sept. 5, 1989.

Rehearing Denied Nov. 29, 1989.

Paul A. Tershel, Melenyzer & Tershel, Washington, Pa., for petitioner.

Robert C. Jones, USX Corp., Pittsburgh, Pa., for respondent USX Corp.

Elizabeth Hopkins, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., for party in interest Director, OWCP, etc.

Before MANSMANN, SCIRICA, and SEITZ, Circuit Judges.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

We are asked to determine the meaning of "total disability due to pneumoconiosis" as that phrase is understood in the context of the 1981 amendments to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 *et seq.* (amended 1982), and the regulations promulgated pursuant thereto.

A 67–year–old retired coal miner, Arthur Bonessa, appeals from the decision of the

---

Benefits Review Board (the "Board") which affirmed an administrative law judge's (the "ALJ") denial of benefits under the Act. The ALJ concluded that although Bonessa was able to establish the existence of pneumoconiosis through x-ray evidence and that Bonessa met the rebuttable presumption that the pneumoconiosis arose out of his 34 years of coal mine employment, Bonessa was not entitled to benefits because he failed to show that his total disability was due to pneumoconiosis. In affirming the decision of the ALJ, the Board cited *Wilburn v. Director, OWCP*, 11 BLR 1–135 (1988), and declared that this case mandates that it was Bonessa's burden to establish that his pneumoconiosis was *in and of itself* totally disabling (emphasis added). The ALJ had found the record medical evidence insufficient to meet this burden; the Board concluded that the ALJ did not err in his findings and conclusions and agreed that Bonessa failed to establish total disability due to the disease.

We are not persuaded that imposing an obligation upon Bonessa to demonstrate that his disability was due solely to pneumoconiosis is required under the Act and its regulations. We will therefore vacate the decision of the Board, which affirmed the erroneous legal conclusion of the ALJ, and remand for proceedings consistent with this opinion.

## I.

The federal black lung program, a comprehensive attempt to manage occupational disease compensation, has been a continuing source of controversy. First enacted in 1969, the Federal Coal Mine Health and Safety Act has undergone alternatively liberalizing and restricting amendments. Congress enacted the first set of amendments in 1972 to counteract the constrictive interpretation given to the Act by the Social Security Administration, charged with responsibility for a portion of the program, which denied approximately 50% of the claims filed. In response, Social Security adopted the so-called "interim presumptions" which set forth certain criteria for eligibility for benefits based upon medical evidence and years of coal mine employment. 20 C.F.R. §§ 410, 490 (1980). Post-adoption, the Social Security's approval rate rose, but a low percentage of benefits awarded to claims filed still existed for the portion of the program administered by the Department of Labor. Because of this, Congress, in 1977, once again amended the statute to require the Department of Labor to adopt criteria "no more restrictive" than the interim presumptions of the Social Security Administration. 30 U.S.C. § 902(f)(2). With the incorporation of these presumptions into its regulations, found at 20 C.F.R. Part 727, the Department of Labor approval rate increased. So, however, did the deficit in the 1978–established Black Lung Trust Fund, to approximately $1.2 billion. Schroeder, *Legislative and Judicial Responses to the Inadequacies of Compensation for Occupational Disease*, 49 Law and Contemporary Problems 151, 168–69 (Autumn 1986).

In response to the swelling deficit of the fund, on January 1, 1982, the Black Lung Revenue Benefits Act of 1981, 26 U.S.C. § 4121 (1981), and the Black Lung Benefits Amendments of 1981, 30 U.S.C. §§ 922, 923 (1982), became effective. These amendments tightened the formulation for determining entitlement to benefits and altered the procedures applicable to the payment of such benefits. *See generally* Lopatto, *The Federal Black Lung Program: A 1983 Primer*, 85 W.Va.L.Rev. 677 (1983), for an overview of the 1981 legislation.

The amendments were viewed as a limiting measure; three of the presumptions of entitlement based on duration of coal mine employment were deleted, the provision allowing survivors to collect compensation if the coal miner, although he suffered from pneumoconiosis prior to death, died from an unrelated cause was repealed, and the requirement that the Department of Labor accept a minimally qualified radiologist's positive diagnosis of pneumoconiosis was removed.

Since the 1981 legislation affected the criteria for establishing eligibility for benefits, new permanent regulations were promulgated. The interim regulations of

Part 727 were, for the most part, deleted by the permanent regulations found at 20 C.F.R. Part 718, which govern claims, like Bonessa's, filed after March 30, 1980.

As mentioned above, the Department of Labor eliminated the presumption, significant to Bonessa's claim, that was previously found at 20 C.F.R. § 727.203(b)(3). This section provided that proof of certain years of working as a miner gave rise to a presumption that a claimant's pneumoconiosis was due to his coal mine employment. The presumption was rebutted by evidence that the miner's total disability "did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3).

Bonessa acknowledges that his claim is not governed by the Part 727 regulations, nevertheless, he asserts that our interpretation of § 727.203(b)(2), as announced in *Carozza v. United States Steel Corporation*, 727 F.2d 74 (3d Cir.1984), is still applicable in determining the issue of whether his disability must be shown to be the exclusive result of his pneumoconiosis. In *Carozza*, we held that, properly read, 20 C.F.R. § 727.203(b)(3) does not permit the award of benefits for partial disability, but only for total disability of which pneumoconiosis is a contributing cause. *Id.* at 78. The holding of *Carozza* was reaffirmed in *Bernardo v. Director, Office of Workmen's Compensation Programs*, 790 F.2d 351 (3d Cir.1986), and embraced by the Court of Appeals for the Eleventh Circuit in *Alabama By–Products Corporation v. Killingsworth*, 733 F.2d 1511, 1516 n. 10 (11th Cir.1984), (agreeing with *Carozza* that § 727.203(b)(3) permits award of benefits for disability when pneumoconiosis is a contributing cause). Bonessa urges us to apply this conclusion that pneumoconiosis need only be a contributing, and not a sole, cause of the disability to recognize his eligibility for benefits.

Because *Carozza's* reasoning was based upon construction of statutory and regulatory language not applicable here, we do not find its holding persuasive. We nonetheless find it imperative to analyze whether the rationale of *Carozza*, that a miner must only show that pneumoconiosis is a contributing cause to his disability, is still viable when attempting to establish total disability under the Part 718 permanent regulations. We begin by examining the history of the enactment of the 1981 amendments and the promulgation of the Part 718 regulations.

## II.

There is no direct statement in the black lung amendments, the regulations or the legislative history focusing precisely on the term "total disability due to pneumoconiosis" in the context of the claim of a living miner. Debate was generated, however, by the 1981 provision which would disallow survivor benefits when a miner, although suffering from pneumoconiosis during his lifetime, did not die from the disease. Under the 1972 amendment, survivors could receive benefits, not only if the miner died due to pneumoconiosis, but also if during his lifetime he was disabled due to pneumoconiosis and then died from an unrelated cause. The 1981 legislation eliminated this "unrelated death" path to entitlement for survivors. The language now directs that survivors are eligible for benefits if the miner's death "was due to pneumoconiosis." 30 U.S.C. § 901(a).

The legislative history contemplates the extent to which a survivor should be compensated. It was suggested by the bill's sponsors that benefits should be awarded if:

> Complications of pneumoconiosis have caused a miner's death or where pneumoconiosis was a substantially contributing factor to that death. For example, pneumoconiosis may have been a substantially contributing cause of death in a case where the principal cause of death was pneumonia. Of course, survivors would not be eligible for benefits in those situations where death was caused by traumatic injury or an unrelated medical condition.

127 Cong.Rec. 31,978 (Dec. 16, 1981) (statement of Senator Hatch). This interpretation was echoed almost verbatim by Representative Perkins in the House debate. *See id.* at 31,747.

The exact parameters of the import of the phrase, "substantially contributing cause of death," (referred to as the "Hatch–Perkins" statement) caused much comment in the rulemaking process. Noting its ambiguous nature, the Department of Labor agreed that there was a need for a new regulatory definition. The Department stated:

> The causal nexus of "due to" has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other. Therefore, some guidance is required as to the intended meaning of the words in this specific context. Without such a new interpretive statement, the prior definition, which was based in part on presumptions which are no longer applicable, may tend to continue to influence future claims adjudications. Clearly, that would not be consistent with the legislative intent. Nor would it be consistent with that intent to await the gradual emergence of a new definition as the result of a case-by-case adjudication process. The Department believes the crucial portions of the legislative history speak clearly as to the intended meaning to be given to the words "death due to pneumoconiosis" as applied to claims which are filed after December 31, 1981. Therefore, it is obligated to promulgate new regulations which are consistent with that intent.

48 Fed.Reg. 24,276 (1983). The resulting regulation, 20 C.F.R. § 718.205(c), reads in relevant part:

> (c) For the purpose of adjudicating survivors' claims filed on or after January 1, 1982, death will be considered to be due to pneumoconiosis if any of the following criteria is met:
>
> \* \* \* \* \* \*
>
> (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or
>
> \* \* \* \* \* \*

(4) However, survivors are not eligible for benefits where the miner's death was caused by a traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death.

Of course, here we are not concerned with survivor's claims following a death claimed to be caused by pneumoconiosis, but rather that of a living miner alleging total disability due to pneumoconiosis. Nonetheless, the regulatory history is instructive.

Without a doubt, a miner seeking benefits must show that he is totally disabled not merely by a respiratory or pulmonary condition but by pneumoconiosis. Generally, under the applicable Part 718 regulations, the miner must prove that he has pneumoconiosis, that he contracted it through his coal mine employment, and that he is totally disabled due to the disease. *See* 20 C.F.R. §§ 718.201–204.

20 C.F.R. § 718.204(c)(4), applicable here, explains that total disability can be found:

> If a physician exercising reasonable medical judgment, based on medically acceptable clinical and laboratory and diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in ¶ b of this section.

20 C.F.R. § 718.204(c)(4).

Despite the language of § 718.204(c)(4), subsection (b) of § 718.204 which defines total disability requires a showing of disability resulting specifically from pneumoconiosis, not merely by some other respiratory or pulmonary condition. This limitation, as it applies to a living miner's claim, is inexplicably found in 20 C.F.R. § 718.204(c)(5), which reads in relevant part:

> Except as provided in 718.305, *proof that the miner suffers* or suffered *from a totally disabling respiratory or pulmonary impairment as defined in paragraphs (c)* (1), (2), (3), (4) and (5) of this section *shall not, by itself, be sufficient*

*to establish that the miner's impairment is or was due to pneumoconiosis.* (Emphasis added.)[1] Our task, then is to analyze this language of § 718.204(c)(5) as it gels with an attempt to prove total disability under § 718.204(c)(4).

Bonessa contends that there is no support in the language of § 718.204(c)(5) that pneumoconiosis must be in and of itself totally disabling. He then argues that the medical evidence presented under § 718.204(c)(4) clearly demonstrated that he was totally disabled due to pneumoconiosis. Bonessa thus urges that the ALJ committed a critical error, subsequently compounded by the Board, by failing to credit a physician's, Dr. Silverman's, assessment of total disability "[b]ecause Dr. Silverman did not specifically find that claimant's respiratory or pulmonary impairment alone was totally disabling, his report cannot support a finding of total disability under this subsection." ALJ Decision and Order at 7.[2]

United States Steel Corporation, Bonessa's employer and appellee herein, adopts the rationale and decision of the Board.

" '[W]e review the decisions of [the Board] for error of law and to assure ourselves that it has adhered to the statutory scope of review.' " *Hillibush v. U.S. Department of Labor, Benefits Review Board,* 853 F.2d 197, 202 (3d Cir.1988), quoting, *Kertesz v. Crescent Hills Coal Company,* 788 F.2d 158, 162 (3d Cir.1986).[3] Accordingly, our discussion necessitates an examination of the administrative proceedings.

### III.

The ALJ first determined that although Bonessa could not demonstrate the presence of pneumoconiosis under the presumptions of either 20 C.F.R. § 718.304, dealing with x-ray diagnosis, radiograph, biopsy or autopsy, or § 718.306, applicable to death claims, he did find that the existence of pneumoconiosis could be established on the basis of x-ray evidence pursuant to § 718.202(a)(1). The ALJ noted that the contradictory nature of the x-ray evidence established "true doubt" as to the existence of pneumoconiosis and resolved that doubt, as is proper, in favor of Bonessa.

Next, the ALJ applied § 718.203(b) which affords to miners who worked ten or more years in the mines a rebuttable presumption that the pneumoconiosis arose out of coal mine employment. The ALJ found the presumption to be unrebutted.

The ALJ then reviewed the medical evidence in order to determine whether Bonessa was totally disabled due to pneumoconiosis. Under the Act, Bonessa would be totally disabled if pneumoconiosis prevented him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine in which he was previously engaged with some regularity and over a substantial period of time. 30 U.S.C. § 902(f)(1)(A); 20 C.F.R. § 718.204(b). The ALJ examined the several criteria for establishing total disability as set forth at § 718.204(c)(1) through (c)(5) and discarded each section as inapplicable with the exception of § 718.204(c)(4). This provision, as previously discussed, outlines that a miner may establish total disability if a physician concludes that a respiratory or pulmonary condition prevented him from engaging in his usual coal mine work or comparable and gainful work.

The record before the ALJ contained medical records and reports from a number

---

1. With the exception of the highlighted phrase, § 718.204(c)(5) concerns claims of miners deceased prior to January 1, 1982, and does not otherwise address claims of living miners alleging total disability.

2. To avoid confusion, we note that anthracosilicosis (which falls within the statutory definition of pneumoconiosis, 20 C.F.R. § 718.201), was the only respiratory disease diagnosis made by Dr. Silverman, although his report did consider that Bonessa had a history of smoking. Therefore Bonessa's respiratory impairment, according to Dr. Silverman, could only have been caused by pneumoconiosis.

3. The scope of review of the Board is dictated by statute and instructs that the ALJ's decision and order must be affirmed if it is supported by substantial evidence, is rational, and is in accordance with the law. 30 U.S.C. § 932(a).

of physicians which were summarized as follows:

Doctors Saradar/Pandit: no pulmonary diagnosis or disability; partially illegible records.

Doctors Wright/Cardenas: no pulmonary diagnosis or mention of respiratory impairment.

Doctor Yong Dae Cho: diagnosis of pneumoconiosis related to coal mine employment; no independent disability assessment.

Doctor Silverman: diagnosis of hypertension, anthracosilicosis, (a condition included in the 20 C.F.R. § 718.201 definition of pneumoconiosis) and possible coronary disease; a combination of all Bonessa's problems prevented him from returning to work; and, anthracosilicosis made 'substantial contribution' to his disability.

Doctor Abrons: examined Bonessa twice, once in 1983 and once in 1986; in 1983, found no evidence of pneumoconiosis and diagnosed poorly controlled hypertension, chronic bronchitis and chronic nasal damage; no evidence of any significant impairment. In 1986 stated that findings essentially unchanged; found no impairment of ventilatory function or gas exchange.

Dr. Laman: diagnosis of obstructive and restrictive lung disease, pneumoconiosis and arteriosclerotic heart disease; believed Bonessa was precluded from performing coal mine employment based on his pulmonary function.

ALJ Decision and Order at 6–7.

The ALJ decided that the preponderance of the medical evidence established that Bonessa did not have a totally disabling respiratory or pulmonary impairment. The ALJ was persuaded by Dr. Abrons' opinion because his reports were based on pulmonary function studies and blood gas studies which were a part of the record and appeared to support his conclusions. The ALJ opined that Dr. Laman's report, based on pulmonary function studies not included in the record, was not as well documented as Dr. Abrons'. The ALJ also noted that Dr. Abrons examined Bonessa more recently than Dr. Laman.

The ALJ next assessed Dr. Silverman's report and rejected it since it did not state that pneumoconiosis alone was the cause of Bonessa's disability.

Accordingly, although Bonessa had established that he had pneumoconiosis arising out his coal mine employment, the ALJ concluded that Bonessa failed to establish that he was totally disabled by pneumoconiosis and, therefore, was not entitled to black lung benefits.

On appeal to the Board, Bonessa specifically challenged the ALJ's evaluation of Dr. Silverman's report. Bonessa argued that under § 718.204(c)(4), once a claimant establishes total disability, a presumption is created that total disability is due to pneumoconiosis and the burden shifts to the party opposing entitlement to show that pneumoconiosis is not the cause of total disability. The Board, citing *Wilburn v. Director, OWCP*, 11 BLR 1–135 (1988), found instead that the ALJ properly found Dr. Silverman's opinion insufficient to meet Bonessa's burden under § 718.204(c)(5) to establish that pneumoconiosis is in and of itself, totally disabling. The Board also rejected Bonessa's contention that it was irrational for the ALJ to credit Dr. Abrons' opinion on disability.

In summation, the Board found the ALJ's conclusion that Bonessa failed to establish disability due to pneumoconiosis to be rational and supported by substantial evidence and affirmed his decision.

As already outlined, we must ensure that the Board has not committed any legal errors in its decision. Here, we conclude that the Board committed an error of law by interpreting the law to require that Bonessa prove that his total disability was due solely to pneumoconiosis. We so conclude despite the deference usually credited to any agency's interpretation of its legislation.

### IV.

■ A review of the deference owed to an agency's interpretation of its regulations was outlined in *Director, Office of Workers Compensation Programs v.*

*Mangifest,* 826 F.2d 1318 (3d Cir.1987). There we acknowledged the Supreme Court's mandate that courts must defer to an agency's consistent interpretation of its own regulations unless it is plainly erroneous or inconsistent with the regulation. *Bowles v. Seminole Rock & Sand Company,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *see also Revak v. National Mines Corporation,* 808 F.2d 996 (3d Cir. 1986). *Mangifest* nonetheless held that such deference does not afford the Director the opportunity to rewrite the regulations through interpretation. 826 F.2d at 1324. Also, the degree of deference is measured by the extent that the Director's interpretation does not strain the plain meaning of the words, or imply language that does not exist. *Bethlehem Steel Corporation v. Occupational Safety and Health Review Committee,* 573 F.2d 157, 161 (3d Cir.1978).

■ Too, this deference is owed to the Director and not the Board, for it is the Director who formulates the policy. *Bethlehem Mines Corp. v. Director, Office of Workmen's Compensation Programs,* 766 F.2d 128, 130 (3d Cir.1985). In this case, no brief was filed on behalf of the Director. Therefore, we need only credit the Board's interpretation of the meaning of "total disability due to pneumoconiosis" to the extent it is relying on an appropriate analysis provided by the Director.

■ In this vein, we examine the Board's reliance on the case of *Wilburn v. Director, OWCP,* 11 BLR 1–135 (1988), as the basis of the Director's interpretation of "total disability due to pneumoconiosis." In *Wilburn,* the Board agreed with the Director's position that to establish total disability pursuant to § 718.204(c)(4), under § 718.204(c)(5) it is not sufficient to establish that claimant's total disability is due to pneumoconiosis. To meet a claimant's burden, according to the Director in *Wilburn,* total disability due to pneumoconiosis must be established by presenting competent evidence demonstrating that his pneumoconiosis is, in and of itself, totally disabling.

In support, the *Wilburn* discussion referenced certain comments originating from the rulemaking process. Although no language was quoted directly, we can assume that the Director's position in *Wilburn* was motivated by the following language, it being the only relevant statement on total disability due to pneumoconiosis:

(c) One comment received suggested that paragraph (c) should be further revised or a new subsection be promulgated to make clear that the miner's total disability must be due to pneumoconiosis. Paragraphs (a) and (b) of this section already state that pneumoconiosis "as defined in § 718.201" must be the cause of the miner's total disability. No useful purpose would be served by reiterating the requirement again in paragraph (c) of this section. The same comment also suggests that paragraph (c) should further state that the pneumoconiosis must have arisen from employment in the nation's coal mines. That requirement is made express in § 718.203 and no useful purpose would be served in repeating it in other sections of the regulations which discuss other criteria for establishing eligibility for benefits. Finally, the same comment also suggests that language should be added to make clear that, except as provided in § 718.305 proof of a totally disabling respiratory or pulmonary impairment shall not by itself be sufficient to establish that the miner's impairment is due to pneumoconiosis. The Department agrees that such an addition would be helpful and paragraph (c) has been revised to incorporate that suggestion.

48 Fed.Reg. 24,275 (1983).

The last sentence in this quote is a reference to 20 C.F.R. § 718.204(c)(5) which indeed states that proof that a miner suffers from respiratory or pulmonary impairment does not establish that the miner's impairment is due to pneumoconiosis. This provision, however, does not state, directly or inferentially, that the miner's impairment must be due solely to pneumoconiosis and, therefore, is not supportive of the Director's position assumed in *Wilburn.*

We find that the more telling comment was elicited from the Director in its discussion construing the words "due to" in the

context of "death due to pneumoconiosis." 48 Fed.Reg. 24,276 (1983). Already possessing a regulatory definition for "total disability," 20 C.F.R. § 718.204(b), and for pneumoconiosis, 20 C.F.R. § 718.201, the words "due to" present the only opportunity for judicial interpretation.

The Director has conceded that the words "due to," as they are understood to demonstrate a causal nexus, invoke a broad range of meaning. To counteract this ambiguity in the context of survivors' claims, the Director promulgated § 718.205(c) providing that death will be considered due to pneumoconiosis if it was a "substantially contributing cause or factor leading to the miner's death."

We can perceive no reason why the phrase "total disability due to pneumoconiosis" should not track the phrase "death due to pneumoconiosis" which encompasses the situation where pneumoconiosis was a substantial contributor to that death and thus, permit recovery for benefits when pneumoconiosis is a significant contributor to a living miner's disability.

The language of § 718.204(c)(5), construed as preclusive by the Director in *Wilburn*, is rather a common sense statement that the disability must be due to pneumoconiosis and not solely to some other respiratory impairment. This is a necessary corollary to the statute's purpose to assist those claimants who became disabled from coal mine employment. 30 U.S.C. § 901(a).

By our reading, all that this provision precludes is allowing a diagnosis of *some* respiratory or pulmonary disease to suffice to show that disability is caused by the specific respiratory or pulmonary disease of pneumoconiosis. Another interpretation is that demonstrating the mere presence of a respiratory or pulmonary disorder will not meet a claimant's burden of total disability; rather, it must be shown, as in *Carozza*, that a substantial nexus exists between the disease and the miner's impairment.

We note also that the cases cited by the Director in *Wilburn* to support its position do not state, as they are cited for, that a miner's pneumoconiosis must, in and of it-

self be totally disabling. In fact, the *Wilburn* decision appears to be the genesis of this interpretation of the regulation.

For example, in *Gessner v. Director, OWCP*, 11 BLR 1–1 (1987), survivor benefits were sought claiming that a miner was totally disabled by pneumoconiosis at the time of his death. The bulk of the Board's decision was related to the particular evidence proffered by the claimant, not relevant either to *Wilburn* or the present matter. In a footnote, however, the Board did comment that, under § 718.204(c)(5), a claimant must prove, either via direct proof or by presumption, that a deceased miner's respiratory disease was due to pneumoconiosis, *Gessner*, 11 BLR at 1–3 n. 4, however, did not use any modifying language indicating that a miner's disability must be due *exclusively* to pneumoconiosis.

Again, in *Tucker v. Director, OWCP*, 10 BLR 1–35 (1987), the Board instructed the ALJ on remand it specify a basis for finding that a claimant's total respiratory disease was due to pneumoconiosis, *not* that the respiratory disease was *totally* due to pneumoconiosis. To clarify, the Board criticized the ALJ for concluding, without explanation, that the claimant's disability was due to dust exposure arising from his coal mine employment. *Id.* at 1–41, n. 17.

Clearly distinguishable from Bonessa's claim is *Baumgartner v. Director, OWCP*, 9 BLR 1–65 (1986), where the Board found that the claimant failed to carry his burden that his disability was due to pneumoconiosis since the only medical report in the record attributed his disability to heart disease. Likewise, in *Gee v. W.G. Moore and Sons*, 9 BLR 1–4 (1986), a claim of total disability due to pneumoconiosis was rejected since one medical report made no finding as to disability and the other found disability due to cigarette smoking. We emphasize that none of these cases held, nor even intimated, as did *Wilburn*, that pneumoconiosis must be the only cause of a miner's disability.

We also find persuasive support in a recent opinion of the Court of Appeals for the Sixth Circuit. In *Zimmerman v. Director, Office of Workmen's Compensa-*

*tion Programs, U.S. Department of Labor,* 871 F.2d 564 (6th Cir.1989), the court questioned whether the ALJ had substantial evidence to support his finding of a causal relationship between a claimant's pneumoconiosis and his total disability. The court found that a medical report concluding that Zimmerman had pneumoconiosis and that he was disabled was sufficient evidence of a causal connection between pneumoconiosis and disability. No where did the court impose a requirement that pneumoconiosis must be the *singular* cause of the disability, although there existed medical evidence, rejected by the court as not probative of causation, that Zimmerman suffered a non-specified chronic obstructive pulmonary disease. We find it significant that the court examined the medical evidence for a "causal link" between the disease and the disability and did not employ stronger language such as a "direct" or a "sole" result thereof.

### V.

We conclude that the language of § 718.204(c)(5) serves as an admonition that one may not prove total disability due to pneumoconiosis simply by demonstrating the presence of any respiratory or pulmonary ailment. Rather a miner must show that pneumoconiosis is a substantial contributor to the disability. If the permanent regulations intended to extinguish living miners' entitlement to benefits when pneumoconiosis is a significant contributor to the disability, which, as *Carozza* demonstrates, was a proper reading of the former Part 727 regulations, then the Department would have promulgated this intention specifically, as it did to eliminate survivors' claims for deaths unrelated to pneumoconiosis.

We recall that pneumoconiosis was diagnosed by three of the physicians who examined Bonessa. Since the basis upon which the Board affirmed the ALJ's order was the Board's erroneous acceptance of the ALJ's rejection of Dr. Silverman's report because it did not establish that pneumoconiosis was the sole factor in Bonessa's disability, and since this is an improper interpretation of the statute and regulations, we will remand this matter for further consideration in light of the correct legal standards. *Hillibush v. U.S. Dept. of Labor,* 853 F.2d at 207. We will therefore vacate the Board's judgment and remand this case for further proceedings in light of this opinion.