

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-1995

# Beatty v Danri Corp

Precedential or Non-Precedential:

Docket 94-3227

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Beatty v Danri Corp" (1995). *1995 Decisions.* Paper 68.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/68

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 94-3227


GENE BEATTY,
                    Petitioner

v.

DANRI CORPORATION & TRIANGLE ENTERPRISES; and
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor,
                    Respondents


Petition from Benefits Review Board
(Nos. 88-4160 BLA & 92-2154 BLA)


Argued January 11, 1995

BEFORE:  COWEN, NYGAARD and ALITO
         Circuit Judges

(Filed March 9, 1995)

Thomas E. Johnson
Johnson, Jones & Snelling
343 South Dearborn Street
Suite 1110
Chicago, IL  60604

Robert E. Lehrer (Argued)
Legal Assistance Foundation
 of Chicago
343 South Dearborn Street
Suite 700
Chicago, IL  60604

        COUNSEL FOR GENE BEATTY
              Petitioner


William W. Schrimpf, Sr. (Argued)

Pietragallo, Bosick & Gordon
One Oxford Centre
38th Floor
Pittsburgh, PA  15219

> COUNSEL FOR DANRI CORPORATION &
> TRIANGLE ENTERPRISES
> Respondent


Gary K. Stearman (Argued)
Suite N-2605
United States Department
 of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Washington, D.C.  20210

> COUNSEL FOR DIRECTOR, OFFICE OF
> WORKERS' COMPENSATION PROGRAMS,
> United States Department of Labor
> Respondent


**OPINION**

Cowen, <u>Circuit Judge</u>.

        Gene Beatty appeals from two orders of the Benefits
Review Board of the United States Department of Labor that denied
him benefits under the Federal Coal Mine Health and Safety Act of
1969, 30 U.S.C. §§ 901-45 (as amended), and its applicable
implementing regulations.  The question presented in this appeal
is whether Beatty is entitled to benefits if he is able to prove
a total disability due to pneumoconiosis arising out of coal
mining employment in combination with other nonrespiratory or
nonpulmonary impairments.  The Director, Office of Workers'

Compensation Programs, argues[1] that a worker must be totally disabled due to a respiratory or pulmonary condition, and not due to other nonrespiratory or nonpulmonary ailments, in order to qualify for benefits. Although this is a close question, and one on which we have received little guidance from Congress, we conclude that the Director's position is reasonable. Accordingly, we will affirm the orders of the Benefits Review Board.

## I.

Gene Beatty began working in coal mining in 1968. He ran a cutting machine and worked as a mechanic. His last job was as a beltman, where his duties included keeping the belt clean, assembling and greasing it, shoveling coal that fell off of it, and rock dusting. In each of these jobs, his lungs were continuously exposed to coal dust.

Beatty worked for Danri Corporation and Triangle Enterprises until June 15, 1983, at which time he suffered a stroke. He has not worked in the mines, or anywhere else, since

---

[1]. Danri Corporation and Triangle Enterprises advance the same argument as the Director. For expediency purposes we will simply refer to their collective position as that of the Director. With respect to any deference arguments made throughout the opinion concerning the Director, however, we obviously do not mean to suggest that Danri Corporation and Triangle Enterprises should be accorded any deference.

Additionally, counsel for Danri Corporation and Triangle Enterprises informed this Court at oral argument that it is Triangle Enterprises who is the relevant employer for purposes of this appeal. Since this assertion was unchallenged by Beatty, we accept it as accurate.

that date.  Until his stroke, his attendance record at work was good.

Beatty filed an application for benefits with the Department of Labor on June 17, 1985, pursuant to the federal black lung program.  A formal hearing before an Administrative Law Judge ("ALJ") was conducted in Pittsburgh, Pennsylvania on March 9, 1988, at which all parties were afforded a full opportunity to present evidence and argument.  The ALJ found that Beatty was entitled to benefits.

The employer appealed from the ALJ's decision awarding benefits and the Benefits Review Board ("BRB") vacated the ALJ's decision in part.  The BRB ruled that Beatty had failed to establish a total disability as required by 20 C.F.R. § 718.204(c).[2]  According to the BRB, a claimant must establish that the miner's respiratory or pulmonary impairment is totally disabling and nonrespiratory or nonpulmonary impairments have no bearing on establishing total disability.  The BRB, therefore,

---

[2].  Section 718.204(c)(4), the section under scrutiny in this case, states:

Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section[.]

20 C.F.R. § 718.204(c)(4) (1993).

remanded the case to the ALJ for consideration of the total disability issue.

On remand, the ALJ conducted a review of the evidence of total disability consistent with the BRB's ruling. The medical evidence is summarized as follows:

Dr. Petsonk: Beatty had pneumoconiosis and this condition was related to his coal mine employment. Beatty had no limitations in walking, climbing stairs, lifting weights, or carrying weight any distance due to a pulmonary disease. Since Beatty's stroke, he walks with a cane and a brace.

Dr. Silverman: Beatty was obviously totally and permanently disabled with the sequelae of his previous stroke, and it was the primary focus of his disability. Beatty did have some coal mine exposure and respiratory symptoms. In his opinion, Beatty had pneumoconiosis which occurred as a result of his exposure to coal dust in the mines which made, "some contribution" to his overall disability.

Dr. Alpern: Beatty had black lung disease and moderate ventilatory insufficiency. Although Beatty had arteriosclerotic heart disease and residuals of a cerebral vascular accident with left hemiparesis, Beatty was totally disabled from his black lung disease.

Dr. Sachs: Beatty was totally and permanently disabled on the basis of his stroke and, perhaps, his arteriosclerotic heart disease. Beatty was not disabled due to a pulmonary condition. There was no evidence of pulmonary impairment due to pneumoconiosis.

ALJ Decision and Order on Remand at 2-3 (June 18, 1992).

The ALJ found the reports of Drs. Petsonk and Sachs to be most credible.  The ALJ reasoned that both of these physicians had conducted blood gas studies as well as vent studies to reach their conclusions, while Drs. Silverman and Alpern did not have the benefit of blood gas results.  Further, the ALJ noted that Dr. Sachs was board-certified in internal medicine as well as in pulmonary diseases, whereas Dr. Alpern was not board-certified in pulmonary diseases.  Additionally, the ALJ explained that Dr. Sachs challenged the pulmonary function studies conducted by Dr. Alpern and felt that they were invalid because these studies did not meet the recommended criteria for such tests.  The ALJ found that Dr. Sachs' view was supported by the applicable regulations.

Based on this evidence, the ALJ found that Beatty was not entitled to benefits because Beatty was not disabled due to a respiratory or pulmonary condition, but rather due to other conditions including his stroke.  On appeal, the BRB affirmed the ALJ's decision and denied Beatty benefits.  This appeal followed.

## II.

The Benefits Review Board had jurisdiction in this matter by virtue of 30 U.S.C. § 932(a), incorporating 33 U.S.C. § 921(b)(3).  This Court has jurisdiction over Beatty's appeal pursuant to 30 U.S.C. § 932(a), incorporating 33 U.S.C. § 921(c).  Beatty appeals from a final order of the BRB dated March 25, 1994, and an interlocutory order dated November 20, 1991, which is now ripe for appeal.

III.

The federal black lung program, first enacted as Title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 96-173, 83 Stat. 742 (1969), provides benefits to miners who have pneumoconiosis, a disease arising from exposure to coal dust during coal mine employment.  Judge Mansmann's scholarly opinion in Bonessa v. United States Steel Corp., 884 F.2d 726, 727-730 (3d Cir. 1989), analyzed the legislative history of the federal black lung program and the alternatively constricting and liberalizing amendments to the Act which include the Black Lung Benefits Act of 1972, Pub. L. No. 92-303, 86 Stat. 150 (1972), the Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, 92 Stat. 95 (1978), the Black Lung Benefits Revenue Act of 1981, Pub. L. No. 97-119, 95 Stat. 1635-39 (1981), and the Black Lung Benefits Amendments of 1981, Pub. L. No. 97-119, 95 Stat. 1643-45 (1981).  Since Beatty filed his claim for benefits after 1982, his claim is governed by the Act, as amended, and by the Department of Labor's permanent regulations codified at 20 C.F.R. § 718 (1993).

Beatty's claim on appeal is that the ALJ and the BRB applied an incorrect legal standard in evaluating his claim for black lung benefits.  A miner who is "totally disabled due to pneumoconiosis" may receive black lung benefits.  30 U.S.C. § 901(a); 20 C.F.R. § 718.204(a).  According to Beatty, the Act and its implementing regulations require a fact finder to assess whether the miner is totally disabled by reference to the miner's pneumoconiosis, his other respiratory or pulmonary conditions,

and his other nonrespiratory or nonpulmonary impairments, not merely by reference to the miner's respiratory or pulmonary impairments. Beatty calls his position a "full contribution" standard. The Director, Office of Workers' Compensation Programs, argues that a worker must be totally disabled due to pneumoconiosis and any other respiratory or pulmonary impairments, not due to other nonrespiratory or nonpulmonary ailments, in order to qualify for benefits. Beatty has dubbed this standard a "limited contribution" standard, and we adopt this nomenclature as a useful shorthand.[3]

In Bonessa, we determined that it was error for the BRB to require a claimant to prove that his total disability was due solely to pneumoconiosis. Bonessa, 884 F.2d at 731. We explained, however, that a miner must show that pneumoconiosis is a substantial contributing cause to the total disability. Id. at 734. Today we are called upon to fill a gap left by our decision

---

[3]. The standard is one of "limited contribution" because it allows impairments other than pneumoconiosis to "contribute" towards proving a total disability (i.e., other respiratory and pulmonary impairments), but is "limited" because it does not allow nonrespiratory or nonpulmonary impairments to be counted unless they are caused by pneumoconiosis.

We wish to make perfectly clear that the Director does not dispute that nonrespiratory and nonpulmonary impairments which are caused by pneumoconiosis count toward the definition of total disability. Indeed, the definition of pneumoconiosis was expanded in 1978 to include its "sequelae." 30 U.S.C. § 902(b). A "sequela" is "any lesion [loss of function] or affection [affliction] following or caused by an attack of disease." Dorland's Illustrated Medical Dictionary 1509 (27th ed. 1988). Accordingly, impairments caused by pneumoconiosis, respiratory or not, count towards the definition of total disability. The Director takes issue with counting nonrespiratory and nonpulmonary impairments that are unrelated to pneumoconiosis.

in Bonessa and determine whether pneumoconiosis may be combined with other unrelated nonrespiratory and nonpulmonary conditions in proving whether the miner is totally disabled (i.e., whether a full contribution or a limited contribution standard is appropriate).

Because Beatty's claim involves an interpretation of a statute by an agency which administers it, to the extent that the statute is ambiguous, the question for the Court is whether the agency's interpretation is based on a permissible construction of the statute. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82 (1984). As the Supreme Court has explained, the reviewing court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843 n.11, 104 S. Ct. 2782 n.11 (citations omitted). In addition, to the extent that Beatty's claim involves an interpretation of the Department of Labor's regulations, we defer to the Director's consistent interpretation of those regulations unless this interpretation is "`plainly erroneous or inconsistent with the regulations'" Bethlehem Mines Corp. v. Director, Office of Workers' Compensation Programs, 766 F.2d 128, 130 (3d Cir. 1985) (quoting Udall v. Tallman, 380 U.S. 1, 16-17, 85 S. Ct. 792, 801-02 (1965)).[4]

---

4. Congress has delegated rule-making powers under the Act to the Secretary of Labor. The Secretary of Labor has redelegated

For purposes of Beatty's claim, the Act provides that the term "total disability" has the meaning given it by the regulations of the Secretary of Labor provided the Secretary complies with certain enumerated restrictions. 30 U.S.C. § 902(f)(1) (1988). Beatty raises three arguments based on the Act, and two arguments based on the regulations, to support his position that a full contribution standard is appropriate. In addition, Beatty argues that the Director's position is not entitled to deference. We will discuss each of these arguments seriatim.

## A. The Act

### 1. 30 U.S.C. § 902(f)(1)(C)

Among the restrictions with which the Secretary must comply in promulgating regulations under the Act is that "such regulations shall not provide more restrictive criteria than those applicable under section 423(d) of Title 42." 30 U.S.C. § 902(f)(1)(C). According to Beatty, the statutory command of § 902(f)(1)(C) compels the conclusion that in assessing a claim for benefits under the Act an ALJ must look to all of a miner's physical impairments in order to determine whether the miner is

(..continued)
all of his powers under the Act to the Director. Because the Director is the Secretary's delegate with respect to the Act, we owe deference to the Director's interpretation. Bethlehem Mines, 766 F.2d at 130. One exception to this proposition occurs when the Secretary's interpretation conflicts with the Director's interpretation. See Elliot Coal Mining Co., Inc. v. Director, Office of Workers' Compensation Programs, 17 F.3d 616, 627 (3d Cir. 1994). We will examine this possibility in conjunction with Beatty's other arguments against according the Director deference. See discussion infra part III.C.

totally disabled.  Beatty points to 42 U.S.C. § 423(d)(2)(B) in support of his position.

Section 423(d)(2)(B), a section of the Social Security Act, states:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.  If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B) (1988) (emphasis added).  Beatty asserts that this statutory language prevents the Secretary from promulgating regulations which determine total disability only by reference to respiratory or pulmonary impairments, and not by reference to the totality of a miner's impairments.

The Director's position is that the Act was not intended to be a universal workers' compensation program, but rather a compensation program that focuses on the miner's respiratory or pulmonary conditions caused by the unique problems of coal mining.  In support of this position, the Director provides an alternative reading of the applicable statutory provisions.  According to the Director, the "no more restrictive criteria" phrase in § 902(f)(1)(C) refers to 42 U.S.C. § 423(d)(2)(A) which states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering

> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in
> the national economy . . . .

The Director asserts that in using the phrase "no more restrictive criteria" Congress was simply concerned that the total disability standard take into account such factors as age, education, and work experience.

The Director's position is borne out by the legislative history concerning the 1972 amendments to the Act. The section of the Senate report entitled "Definition of Total Disability" contains a statement of the Committee on Labor and Public Welfare's intent in changing the definition of total disability:

> By providing that criteria established under this definition
> shall not be more restrictive than those applicable under
> Section 223(d) of the Social Security Act, this section
> assures that due weight shall be given to such factors as
> age, education and previous work experience in the
> application of the revised definition of total disability,
> in order to insure as broad coverage as possible.

S. Rep. No. 743, 92nd Cong., 2d Sess. 16-17 (1972), reprinted in 1972 U.S.C.C.A.N. 2305, 2321. Accordingly, we cannot agree that § 902(f)(1)(C) decisively answers this question in favor of Beatty.

## 2. 30 U.S.C. § 931(b)(2)(C)

Beatty's next argument is that § 931(b)(2)(C) of the Act supports his full contribution standard. The Act provides that after a certain period, claims for benefits would be shifted to state workers' compensation programs approved as adequate under statutory standards. 30 U.S.C. § 931(a). Beatty notes

that § 931(b)(2)(C) provides that a state program can be approved if its standards are "substantially equivalent" to the federal standards. Beatty asserts that state workers' compensation statutes have traditionally adhered to a full contribution standard. Accordingly, Beatty argues that § 931(b)(2)(C) evidences Congress' expectation that the regulations implementing 30 U.S.C. § 902(f) would incorporate a full contribution standard.

We believe that Beatty's interpretation of this section is unwarranted. One of the reasons that the black lung benefits program was enacted was because few states provided for such benefits. 30 U.S.C. § 901(a). Accordingly, it defies logic to argue that Congress intended to incorporate specific state causation standards into its Act. Further, despite Beatty's arguments to the contrary,[5] we can see no obvious flaw in the position espoused by the Director that the federal program merely provides minimum standards for the states to meet. As the Director points out, if the states wanted to be more generous in awarding benefits, they could be. Additionally, as the Director notes, the Department of Labor regulations make clear that the federal program provides only minimum standards for the states to meet. 20 C.F.R. § 722.146. Thus, we are unable to conclude that § 931(b)(2)(C) dictates the result Beatty desires in this case.

[5]. Beatty makes the textual argument that because Congress used the phrase "substantially equivalent to" instead of "no more restrictive than" in § 931(b)(2)(C), it could not have contemplated approving more generous state standards. We do not believe Congress intended to place a ceiling on state benefits by using the "substantially equivalent" phraseology.

### 3.  30 U.S.C. § 902(f)(1)(A)

Beatty's final statutory argument is based on § 902(f)(1)(A) of the Act which provides that "a miner shall be considered totally disabled when <u>pneumoconiosis prevents</u> him or her from engaging in gainful employment requiring the skills and abilities comparable to [his or her past coal mine work]." (emphasis added).  To support his argument, Beatty refers to the dictionary definition of the word "prevent," which he states as "to stop, keep, or hinder [a person or other agent] from doing something." (citing The Oxford English Dictionary (2d ed. 1989)).  According to Beatty, the dictionary definition of "prevent" indicates that if a number of factors contribute to "preventing" a particular result -- for example, if pneumoconiosis and various nonrespiratory and nonpulmonary impairments "prevent" a miner from working -- then any one of the factors may be said to "prevent" the result.

We find that this linguistic argument is of no avail to Beatty.  Indeed, it merely begs the question of how to construe the phrase "when pneumoconiosis prevents."  The phrase "when pneumoconiosis prevents" is ambiguous because it does not state the precise role pneumoconiosis must play in disabling the miner. One possible interpretation is that pneumoconiosis must be the sole cause of the miner's inability to engage in his past work. We rejected this notion in <u>Bonessa</u>.  884 F.2d at 731.  Other possibilities include both the full contribution and limited contribution standards advanced by the parties in this case.

Accordingly, Beatty's reference to the dictionary definition of the word "prevent" does not lead us toward a specific conclusion in this case.

## B. The Regulations

Beatty's next claim is that the relevant regulations implementing the Act require a full contribution standard. He advances two arguments to support his contention. First, he asserts that the history of the successive regulations, particularly the interim regulations governing the black lung program, dictate a full contribution standard. Second, Beatty asserts that the relevant regulations parallel the language of the statute itself and dictate a full contribution standard. We are unpersuaded by Beatty's arguments.

The Black Lung Benefits Reform Act of 1977 (BLBRA) granted the Secretary of Labor authority to establish total disability regulations for certain classes of cases. Pending issuance of the new permanent regulations, the BLBRA provided for interim regulations applying standards different from (and more generous than) the regulations that had previously been in effect.[6] Pittston Coal Group v. Sebben, 488 U.S. 105, 110, 109 S. Ct. 414, 418 (1988). The Director concedes that the interim regulations incorporated a full contribution standard. Nevertheless, the Director argues that the interim regulations

---

[6]. The regulations previously in effect were the permanent regulations established by the Secretary of the Department of Health, Education and Welfare.

and the permanent regulations stem from different Congressional concerns.  According to the Director, the interim regulations were designed to speedily process a large backlog of claims, while the permanent regulations were more concerned with accuracy in adjudicating claims.

Whether or not the Director has accurately portrayed Congress' intent in authorizing the interim regulations, we find that the interim regulations have little relevance to the issue here.  The issue before the Court is the proper interpretation of the Secretary of Labor's permanent regulations.  Accordingly, we find Beatty's first argument to be of little value.

Beatty's second argument, that the relevant regulations parallel the language of the Act itself and dictate a contribution standard, is simply belied by the text of the regulations.  The relevant Department of Labor regulation states that "total disability may . . . be found if a physician exercising reasoned medical judgment . . . concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment . . . ."  20 C.F.R. § 718.204(c)(4).  Further, the regulations state that proof that a miner suffers from a totally disabling respiratory or pulmonary impairment is "not, by itself sufficient to establish that the miner's impairment is or was due to pneumoconiosis."  20 C.F.R. § 718.204(c)(5).  Accordingly, the regulations require the miner to establish that he has pneumoconiosis, and also that he is totally disabled.  The Act, by contrast, simply states that a miner is totally disabled if "pneumoconiosis prevents him or her from

engaging in gainful employment . . . ."  30 U.S.C. §
902(f)(1)(A).  The Act does not further define how to analyze the
phrase when "pneumoconiosis prevents."  Thus, the regulations set
out a more specific formula for resolving these claims than does
the Act, a formula that allows a claimant to include all
respiratory or pulmonary impairments in establishing total
disability.  The regulations do not contemplate inclusion of
nonrespiratory or nonpulmonary impairments as Beatty asserts.

        To bolster his second argument, Beatty asserts that
only his construction of the Part 718 regulations (a full
contribution construction) makes them consistent with the
statute.  Beatty notes that regulations must be construed, if at
all possible, to be consistent with the governing statute.  See
Public Employees Retirement System v. Betts, 492 U.S. 158, 171,
109 S. Ct. 2854, 2863 (1989).  The problem with Beatty's argument
is that he is evaluating the regulations under his own reading of
the statute.  Because we demonstrated in the last section that
Beatty is incorrect in his assertion that the statute clearly
incorporates a full contribution standard, Beatty's regulatory
argument is mere bootstrapping.  Accordingly, we are unpersuaded
by Beatty's regulatory arguments.[7]

_____

[7]. Beatty also argues that Bonessa resolves this dispute by
declining to construe total disability "due to" pneumoconiosis,
20 C.F.R. § 718.204(a), to mean that pneumoconiosis must be the
sole cause of a miner's total disability.  As we noted
previously, the Bonessa decision focused on the proper standard
of causation (whether sole cause or substantial contributing
cause was the correct standard).  The Bonessa court did not
decide the question of the range of other impairments
pneumoconiosis could combine with to create a total disability.
Further, in its opinion, the Bonessa court hinted at the proper

At best, Beatty's statutory and regulatory arguments disclose another possible construction of the Act and its implementing regulations.  Beatty has not demonstrated that the Act unambiguously dictates a full contribution standard. Similarly, Beatty has not demonstrated that the Director's interpretation of the applicable regulations is "plainly erroneous" or "inconsistent" with those regulations. Accordingly, we are inclined to uphold the Director's position.


C.  Whether Deference is Appropriate

Beatty's final contention is that the Director's position is not entitled to deference.  To support this position, Beatty advances four arguments.  First, Beatty argues that because the Director is merely a delegatee of the Secretary, the Secretary's interpretation must prevail over the Director's if the two are in conflict.  He cites Elliot Coal Mining Co. v. Director, Office of Workers' Compensation Program, 17 F.3d 616, 627 (3d Cir. 1994), in support of this proposition.

Unfortunately for Beatty, he fails to demonstrate any conflict between the Director's position and that of the Secretary.  Beatty argues that the Part 718 regulations (i.e.,

(..continued)
resolution of the case before us when it commented that "[w]ithout a doubt, a miner seeking benefits must show that he is totally disabled not merely by a respiratory or pulmonary condition but by pneumoconiosis."  Bonessa, 884 F.2d at 729. Implicit in the Court's statement is the conclusion that it is the universe of respiratory or pulmonary impairments that is at issue in determining whether the miner is totally disabled, not the universe of all physical impairments.

the Secretary's regulations), embody a full contribution standard and therefore the Director's interpretation of these regulations is in conflict with the Secretary's interpretation. As we have explained, however, Beatty has not demonstrated that the Part 718 regulations embody a full contribution standard. Accordingly, Beatty's first argument against according the Director deference is fatally flawed.

Beatty's next argument is that deference to an administrative agency's construction of a statute is inappropriate if a court, employing traditional tools of statutory construction, is able to discern Congress' intent in enacting the measure. For this proposition, Beatty cites Immigration and Naturalization Service v. Cardoza Fonseca, 480 U.S. 421, 446, 107 S. Ct. 1207, 1221 (1987). Beatty claims that the statutory text itself permits the Court to decide the question of the appropriate standard.

Once again, however, Beatty's argument is fatally flawed. As we have previously determined, the text of the Act does not unambiguously embrace a full contribution standard. We are not able to discern Congress' precise intent from the language presented to us in the Act. Accordingly, Beatty's argument cannot succeed.

Beatty's third argument is that the Senate Committee report accompanying the 1977 Reform Act, in discussing its understanding of "total disability" under the Act, expressed the "expectation that the Secretary of Labor will promulgate standards which give the benefit of any doubt to the coal miner."

S. Rep. No. 209, 95th Cong., 1st Sess. 13 (1977).  Further,
Beatty argues that the agency itself assumed this obligation by
incorporating this expectation into its regulations at 20 C.F.R.
§ 718.3(c) (1993).

Both the full contribution standard urged by Beatty and
the limited contribution standard urged by the Director allow
impairments other than pneumoconiosis or its sequelae to be
counted toward the definition of total disability.  Admittedly,
Beatty's position is more generous toward miners than that of the
Director.  We do not think, however, that the Director runs afoul
of his duty of establishing regulations which give the benefit of
the doubt to the claimants by promulgating and implementing
regulations that place some limits on the kinds of impairments
that a claimant can count towards establishing a total
disability.  Accordingly, we are unpersuaded by Beatty's
argument.

Beatty's final argument is that the Director's current
reading of the statute and the Part 718 regulations is
inconsistent with her prior constructions and is merely expressed
in a litigating position.  Beatty argues that under such
circumstances it is inappropriate to accord the Director
deference.  Beatty cites <u>Bowen v. Georgetown University Hospital</u>,
488 U.S. 204, 212-13, 109 S. Ct. 468, 473-474 (1988), in support
of his position.

Beatty has not demonstrated any inconsistency in the
position taken by the Director concerning the current Department
of Labor regulations.  At best, Beatty can demonstrate some

inconsistency between the interpretation of DOL's permanent regulations and its interim regulations. As previously discussed, however, the interim regulations do not concern us here. Accordingly, we are unpersuaded by Beatty's argument that the Director's position is not entitled to deference.

IV.

In addition to Beatty's inability to provide a persuasive reason not to defer to the Director's position, we must point out that adhering to Beatty's view would produce undesirable consequences. Under Beatty's view, a miner who has pneumoconiosis, but whose total disability is only 10% attributable to this disease, would be able to recover benefits if his completely unrelated physical problems (such as a stroke) created 90% of his total disability. While a persuasive argument can be made (and is made by the Director) that the state of current medical science makes it difficult to distinguish between pneumoconiosis and other respiratory or pulmonary diseases, it is untenable that physical impairments that affect other parts of the body (such as a stroke) would often be indistinguishable from pneumoconiosis.[8] While neither the Director's view nor Beatty's view will likely lead to a perfect test for compensation, we find the Director's view to be reasonable. Accordingly, we reject

---

[8]. Beatty argues that some nonrespiratory and nonpulmonary impairments are difficult to distinguish from pneumoconiosis. While this may be the case in some instances, we do not believe these instances to be dispositive.

Beatty's claim on appeal that a miner is entitled to benefits if he or she is able to prove a total disability due to pneumoconiosis arising out of coal mining employment in combination with other unrelated nonrespiratory or nonpulmonary impairments.[9]

In announcing the position that we set forth today, we align ourselves with a recent decision of the Court of the Appeals for the Fourth Circuit which decided this very question. In that case, <u>Jewell Smokeless Coal Corporation v. Junior Street</u>, 42 F.3d 241, 244 (4th Cir. 1994), the court deferred to the reasonable interpretation of the Director, Office of Workers' Compensation Programs and rejected the claimant's argument that a miner need only establish a total disability due to pneumoconiosis in combination with nonrespiratory and nonpulmonary impairments.

For the foregoing reasons, we will affirm the orders of the Benefits Review Board.

---

[9]. Because we reject Beatty's claim that the Board applied an inappropriate legal standard, we need not reach his other argument that the evidence of record, if scrutinized under Beatty's standard, obliges a judgment from this Court directing an outright award of benefits.