

1997 Decisions

6-3-1997

# Penn Allegheny Coal v. Williams

Precedential or Non-Precedential:

Docket 96-3464,96-3464

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Penn Allegheny Coal v. Williams" (1997). *1997 Decisions*. Paper 119.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/119

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 3, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3464

In the Matter of: PENN ALLEGHENY COAL COMPANY
and
OLD REPUBLIC INSURANCE COMPANY,
<u>Petitioners</u>

v.

HARRY D. WILLIAMS and DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
<u>Respondents</u>

Petition for Review of a Decision and
Order of the Benefits Review Board,
United States Department of Labor (No. 95-1398BLA)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 22, 1997

Before: SLOVITER, <u>Chief Judge</u>, ROTH, <u>C ircuit Judge</u> and
POLLAK,* <u>District Judge</u>

(Filed June 3, 1997)

George H. Thompson
Thompson, Calkins & Sutter
Pittsburgh, PA 15219

 Attorney for Petitioners
_____

*Hon. Louis H. Pollak, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

Robert J. Bilonick
Pawlowski, Tulowitzki & Bilonick
603 North Julian Street
Ebensburg, PA 15931

 Attorney for Respondent
 Harry D. Williams

J. Davitt McAteer
 Acting Solicitor of Labor
Donald S. Shire
 Associate Solicitor
Christian P. Barber
 Counsel for Appellate Litigation
Jennifer U. Toth
U.S. Department of Labor
Washington, D.C. 20210

Attorneys for Director,
Office of Workers' Compensation
Programs

**OPINION OF THE COURT**

SLOVITER, <u>Chief Judge</u>.

Henry D. Williams filed a claim for benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-945, claiming he had pneumoconiosis as a result of his coal mine employment. Williams worked in the coal mining industry for about 35 years, most of it underground. He retired from his operator job in 1982. His last employer was Penn Allegheny Coal Company.

The District Director of the Office of Workers' Compensation Programs found Williams eligible for benefits. After a hearing the Administrative Law Judge (ALJ) awarded benefits. Penn Allegheny appealed and the Benefits Review Board (the Board or BRB) affirmed the ALJ's decision. The Board denied Penn Allegheny's Motion for Reconsideration. Penn Allegheny and Old Republic Insurance Company (collectively referred to as Penn Allegheny) then filed this Petition for Review.

2

## I.

In order to establish eligibility for benefits, a claimant must establish the existence of pneumoconiosis, show that it arose out of coal mine employment, and show that s/he is totally disabled as a result of the pneumoconiosis. Beatty v. Danri Corp. & Triangle Enterprises, 49 F.3d 993, 997 (3d Cir. 1995).

The language of 20 C.F.R. § 718.202, set forth in the margin, provides that pneumoconiosis may be shown through 1) a chest x-ray; 2) a biopsy; 3) statutory presumptions (which are not applicable here); 4) a physician's evaluation.[1] In order to determine whether Williams had pneumoconiosis, the ALJ reviewed doctors' reports concerning x-rays, biopsies, and Williams' general health history. The x-rays all showed changes in the lungs but the physicians disagreed whether they showed signs of

_____

1. "A finding of the existence of pneumoconiosis may be made as follows:

(1) A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis.

. . .

(2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis.

. . .

(3) If the presumptions described in SS 718.304, 718.305 or § 718.306 are applicable, it shall be presumed that the miner is or was suffering from pneumoconiosis.

(4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion."

20 C.F.R. § 718.202(a).

3

pneumoconiosis or some other disease. The ALJ then reviewed the biopsy evidence, as analyzed by the physicians but they also disagreed as to what the biopsy disclosed.

Drs. James A. Puckett and Gary F. Haverty diagnosed Williams, based on a biopsy, as having pulmonary fibrosis with evidence of anthracosilicosis in the right lower lung and mild pulmonary fibrosis with evidence of anthracosilicosis in the left lower lung. Dr. Joshua Perper testified he unquestionably detected the presence of coal workers' pneumoconiosis based on the biopsy slides. On the other hand, Dr. Robert J. Sinnenberg reviewed the biopsy slides and reported the slides showed scattered deposits of coal dust, but nothing to indicate that these deposits amounted to coal workers' pneumoconiosis. He detected interstitial fibrosis but felt it was associated with Williams' history of microplasma pneumonia.

Dr. Everett Oesterling reported it was not possible to make a definite diagnosis of pneumoconiosis from the slides available from the biopsy. He believed the tissue slides were inadequate for giving a diagnosis because they were taken from the lower instead of the upper lungs and were too compressed. He did, however, detect some evidence of fibrosis along with some black pigment fragments on the tissue slides.

After considering all of the pathology reports, the ALJ found the conclusions of Drs. Puckett, Haverty and Perper to outweigh those of Drs. Oesterling and Sinnenberg and found that pneumoconiosis had been established by their biopsy reports. The ALJ then found that the positive biopsies lent support to the opinions of those physicians who had concluded that the x-rays showed changed lung conditions due to pneumoconiosis.

In accordance with 20 C.F.R. § 718.202(a)(4), the ALJ examined conflicting reports by nine different physicians. The ALJ then found that the physicians' reports provided a basis for concluding that Williams had established that he had pneumoconiosis and that it arose out of his coal mining employment. The ALJ also found that Williams had established his total disability and was therefore entitled to benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. § 901-945.

4

On its appeal to the BRB, Penn Allegheny argued that the ALJ erred when he found that the x-rays and physicians' reports established pneumoconiosis. The Board affirmed the ALJ's finding that the x-rays established pneumoconiosis and in a footnote stated that "Inasmuch as we affirm the administrative law judge's findings pursuant to Section 718.202(a)(1), and Section 718.202(a) provides alternative methods of establishing the existence of pneumoconiosis, we need not address employer's arguments regarding Section 718.202(a)(2) and (4)." BRB Opinion at 3 n.3. That is, the Board reasoned that any one of the four methods of determining the presence of pneumoconiosis listed in § 718.202(a) may by itself establish the existence of the condition, independent of the evidence provided by the other three methods.

Penn Allegheny now petitions this court for review.

## II.

Penn Allegheny argues that the Board acted contrary to law and/or abused its authority by relying exclusively on the chest x-ray evidence, and failing to consider that evidence in conjunction with the biopsy evidence and the physicians' reports. It asserts that once the ALJ found it necessary to consider the x-ray evidence in light of the biopsy evidence, the Board was precluded from finding the presence of pneumoconiosis based on the x-ray evidence alone. The Director agrees that the Board erred in interpreting 20 C.F.R. § 718.202 as providing disjunctive methods of establishing the presence of pneumoconiosis. Instead, the Director argues, the methods of proof set forth in that regulation are to be weighed together to determine whether a claimant has the disease.

The Board's scope of review is limited to considering whether the ALJ's findings of fact and conclusions of law are rational, supported by substantial evidence, and consistent with applicable law. O'Keeffe v. Smith, Hinchman and Grylls Associates, Inc., 380 U.S. 359, 362 (1965). The Board must affirm the ALJ's findings of fact if they are supported by substantial evidence in the record as a whole. Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986).

5

Our standard of review for questions of law is plenary. BethEnergy Mines, Inc. v. Director, OWCP, 32 F.3d 843, 846 (3d Cir. 1994). We will, however, defer to the Director's reasonable interpretations of its regulations. Beatty v. Danri Corp. & Triangle Enterprises, 49 F.3d 993, 997 (3d Cir. 1995). We owe this deference to the Director and not the Board, because it is the Director who formulates policy. Bonessa v. U.S. Steel Corp., 884 F.2d 726, 732 (3d Cir. 1989).

We agree with the Director that "although section 718.202(a) enumerates four distinct methods of establishing pneumoconiosis, all types of relevant evidence must be weighed together to determine whether the claimant suffers from the disease." Director's Brief at 15. See also, 30 U.S.C. § 923(b) ("in determining the validity of claims under this part, all relevant evidence shall be considered"); Kertesz, 788 F.2d at 163 (the ALJ should review all medical evidence presented in determining presence of pneumoconiosis).

It is significant that the language of the regulation does not list the methods in the disjunctive. The word "or" does not appear between the paragraphs enumerating the four approved means of determining the presence of pneumoconiosis. It follows that the Board erred when it found the presence of pneumoconiosis based on the x-ray evidence alone without evaluating the other relevant evidence. However, we need not disturb the Board's decision if the error was harmless. Because the ALJ used the correct legal standard, we may independently evaluate the evidence presented to the ALJ to determine whether the ALJ's findings are supported by substantial evidence. Kertesz, 788 F.2d at 163.

The ALJ thoroughly examined all of the evidence presented to him and reviewed the biopsy evidence after finding the x-ray evidence to be conflicting. The ALJ was within his discretion to credit the opinions of Drs. Puckett, Haverty and Perper over those of Oesterling and Sinnenberg. In fact, Dr. Oesterling's opinion that the tissue slides were inadequate to rule out pneumoconiosis was inconsistent with Dr. Sinnenberg's conclusion that the biopsy showed no pneumoconiosis, leaving Dr.

6

Sinnenberg's report unsupported by other medical evidence. Although Dr. Oesterling's opinion would tend to undercut the opinion of those doctors who found the presence of pneumoconiosis, those doctors were supported by each other as well as by the clinical and radiological evidence. In any event, under 20 C.F.R. § 718.106(c) a negative biopsy report is not conclusive evidence that a miner does not have pneumoconiosis. In contrast, the same section provides that positive findings will constitute evidence of pneumoconiosis. Id. The ALJ was also within his discretion to place more weight on the opinions of Drs. Puckett and Haverty as they were the physicians who performed the actual biopsy.

Pursuant to the regulation which makes a physician's evaluation relevant, the ALJ also considered the various reports of the other physicians. He found that those from Drs. Miller, Long, Gress and Malhotra, which found the presence of pneumoconiosis, were more persuasive than those of Drs. Garrettson, McKinley, Strother and Scott, which did not. He explained that Dr. Garrettson's 1982 report was outweighed by more recent reports, and that the determinations of Dr. McKinley that Williams was totally disabled due to an unknown etiology and of Drs. Strother and Scott that Williams was suffering from idiopathic pulmonary fibrosis were less persuasive than those of the other physicians. The ALJ concluded that the biopsy and x-ray evidence as a whole lent more weight to the determinations of those physicians who had found Williams to have pneumoconiosis.

### III.

We conclude that the ALJ's determination of pneumoconiosis is supported by substantial evidence and that the ALJ properly and thoroughly evaluated all of the relevant evidence. We will therefore deny the Petition for Review, but do so for reasons different than those given by the BRB.

7

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

8